Statement.
MONROE, J.
Plaintiff sues Ike Peitel, and Morris Eeitel as Ms surety, for $1,500 damages alleged to have been sustained by reason of the nonexecution by Ike Eeitel of a contract whereby he undertook to sink a well, and it demands of Ike Peitel the further sum of $82.96. Defendants admit the contract, and the receipt of certain payments on account thereof, and they allege that they had progressed satisfactorily with its execution until Sunday, October 12, 1901, when they discontinued operations; that upon returning to the work upon the following Monday they found the pipes jammed, and were unable to move or remove them, or sink the well any further; that they believe that some unknown person must have brought about the condition mentioned by maliciously dropping a holt or spike between the casing and the working pipe; and that the well ought to have been guarded by the plaintiff. They further allege that, agreeably to the contract, the plaintiff bought, for account of Ike Eeitel, a drilling outfit (consisting of machinery and tools), which remained pledged for the price, and was to have been returned to said Eeitel, upon the completion of the work, at the agreed price of $2,850, and by him received in part payment of the compensation called for by said contract, but that, after the contract became impossible of fulfillment, and without any fault on the part of respondent, plaintiff assumed and retained control of said outfit (the title to which is in respondent), and should he condemned to pay $20 a day as the value of the use thereof from March 1, 1902.
By supplemental petition plaintiff alleges that it advanced $2,850 to buy the outfit, on condition, as written in the contract, that said outfit should be pledged to it, and, on the completion of the work, received by Eeitel at that valuation, and that, Eeitel having abandoned the contract, plaintiff is entitled to have judgment against him dissolving the same, condemning him in said amount, recognizing petitioner’s right of pledge, and ordering the outfit to he sold, and it prays judgment accordingly. The contract in question, entered into August 2, 1901, so far as it is necessary to he quoted, reads as follows:
Eeitel “agrees to * * * sink a well * * * at a point selected by plaintiff * * *; to furnish the machinery tools, piping, and all material and labor necessary to complete said well, for the sum of $5500 * * *; to commence operation within fifteen days * * * and continue work, uninterruptedly, to its completion, and * * * to finish the same within a reasonable time * * *; it being understood that if oil or other valuable substance be found in paying quantities at a depth less than 1500 feet, and to the entire satisfaction of” plaintiff, “said work shall cease and this contract declared completed.”
Eeitel agrees “to ship and deliver plaintiff, at Hammond, the following described machinery and tools, to wit [here follows detailed statement of appliances], and all other material necessary to constitute a complete well boring outfit * * * and valued at $2850 * * *; said machinery and tools and other material being pledged, free of liens * * *, and to remain in the hands of” plaintiff “for money advanced, as hereinafter provided for, until the completion and acceptance of said well, at Which time, said machinery, outfit, etc., shall be delivered to Eeitel as his sole property; said Eeitel agrees to accept return of the above specified machinery, at its valuation of $2850, as part payment on the contract, and also agrees, in case the well proves a non producer, to pull up all piping that can be saved.”
Plaintiff “agrees to accept the said well after its completion in satisfactory, workmanlike manner, and * * • to pay the sum of $5500 in a manner hereinafter provided, as follows s= * a:. tjj6 sum 0f 1425 upon the receipt of a bill of lading for the above described machinery • * *, and the balance, $1425, to be paid upon the arrival of said machinery * * *, also to pay the cost of piping required within ten days of its arrival at Hammond, La. Above payments and all other payments that may be made * * applying on the cost of said well, to be deducted from the total amount, of $5500, and the balance due, after all deductions * * * to bé paid at ex *81 piration of this contract. * * * It is agreed that” Feitel “shall receive $100 per week, during the progress of the work, on account of the contract price.”
This contract was signed August 2, 1901, with Morris Feitel as surety (for $1,500), and Ike Feitel began work under it August 14th, and- continued operations until the latter part, say the 25th, of October, when, having knocked off for some 36 hours, he found that the drill rod, or inside pipe, could not be moved, the evidence showing the reason to have been that he had forced it down some 20 or 25 feet below the casing or outside pipe, and had so left it, and that the result was to have been expected. There is nothing to sustain the theory that any one, maliciously or otherwise, dropped a holt or spike between the inside and outside pipes, or that the plaintiff was under any obligation to assume, or did assume, charge of the w.ork, or responsibility for the meddling of outsiders. The defendant gave some testimony, which was admitted over the objection of the plaintiff’s counsel, to the effect that he called on the plaintiff to furnish him with 2%-inch pipe to be used as a drill rod, and that the plaintiff declined to furnish it. Our learned Brother of the district court, referring, in his reasons for judgment, to the ruling mentioned, says:
“I very much doubt the correctness of my ruling on plaintiff’s objection, but I find it unnecessary to disturb it, because the positive testimony of two witnesses is that the defendant refused to go on, and quit work, assigning as his reason that there was no money in it for him.”
We concur in the view thus expressed, and find it to be a fact that the defendant abandoned the work because he was afraid he would lose money if he went on with it. We ■also find with the judge a quo as follows:
“The original petition claims damages of defendant, for his breach of the contract, $1,582.-96. The evidence sustains the demand. The amount paid for labor on the well was $717.23. This is proved by the oral and documentary evidence. $172.15 was paid for pulling up and saving the pipe as far as possible. Defendant’s duty was to pull it up. The contract so provided. He abandoned the work, and, to save the pip'e, plaintiff had to pull it up. The cost is proved at $172.15. Pipe worth $693.58 was stuck and fastened by defendant’s negligence. * * * It was plaintiff’s pipe, and was lost by defendant’s breach of his contract. His duty was to care for the well during the work. He had absolute control. * * * These sums aggregate $1,582.96, and to this amount plaintiff is entitled to judgment. * * *>>
Our learned Brother further finds that, in view of the fact that the outfit had been shipped directly to the plaintiff and paid for by it, of the stipulation in the contract to the effect that said outfit should remain in the hands of the plaintiff until the completion and acceptance of said well, “and should then” (and only then) “be delivered to said party of the first part” (meaning the defendant) “as his sole property,” and of the fact that the well was- not completed or accepted, therefore the title to the outfit never vested in the defendant. And he gave judgment against Ike Feitel for $1,582.96, and against him and his surety in solido for $1,500, with legal interest from judicial demand, and costs, and dismissed the demand of the plaintiff, as contained in the supplemental petition, together with the reconventional demand of the defendant. Ike Feitel has appealed, and the plaintiff has answered, praying that the judgment he amended by allowing it the amount claimed in the supplemental petition.
Opinion.
The defendant, having through his own negligence brought the work which he contracted to perform into such a condition that he was unable to go on with and complete it, and having then abandoned his contract, became liable for the loss thereby inflicted upon the plaintiff, including the amount reasonably expended in the effort to minimize such loss. The plaintiff’s application for amendment of the judgment comes too late. It should have been filed three days before *82 that upon which the cause was first fixed for argument in this court. Code Prac. art. 890; Converse v. Str. L. Robinson, 15 La. Ann. 434; Succession of Trouilly, 52 La. Ann. 279, 26 South. 851. As to the demand in reconvention, apart from other considerations, the testimony does not sufficiently inform us as to the time and extent of the use made by plaintiff of the outfit.
Judgment affirmed.