692 So.2d 698 (1997)
Gerald SONNIER, et ux., Plaintiffs-Appellees,
v.
BAYOU STATE MOBILE HOMES, INC., Defendant-Appellant.
No. 96-1458.
Court of Appeal of Louisiana, Third Circuit.
April 2, 1997.
Rehearing Denied May 15, 1997.
Roderick Gregory Bertrand, Kinder, for Gerald and Patsy Sonnier.
Joseph Bradley Ortego, Eunice, for Bayou State Mobile Homes, Inc.
Before DECUIR, AMY and GREMILLION, JJ.
DECUIR, Judge.
This is a case brought under the New Home Warranty Act, La.R.S. 9:3142, et seq. Gerald and Patsy Sonnier filed suit against Bayou State Mobile Homes, Inc. alleging major structural defects in the home they purchased from Bayou. The trial court found for the Sonniers awarding damages and attorney fees. Bayou appeals the judgment. We reverse.

FACTS
The Sonniers purchased a new movable home from Bayou in March of 1991. It had been constructed to the Sonniers' specifications at Bayou's place of business in Eunice.
*699 It was moved to the Sonniers' property in Jefferson Davis Parish and installed by Bayou. The purchase price of the house was $38,885.00, which included moving and installation. Preparation of the homesite was the Sonniers' responsibility.
The Sonniers first encountered a problem with the home during its construction. Mr. Sonnier discovered a piece of floor decking in the kitchen area was delaminated causing a slight bump. He called this to the attention of Bayou and was assured it would be corrected. Later when the home was placed on the Sonniers' land, they began to experience further problems. First, they noticed that the bump did not appear to have been corrected to their satisfaction. Bayou attempted to correct this problem; however, Sonnier requested Bayou stop when its efforts appeared to be making the condition worse.
The Sonniers next experienced problems with the front door not opening properly and with leaking around the door. Bayou responded to calls from the Sonniers and told them that the house appeared to be settling and that this was not Bayou's responsibility. Nevertheless, Bayou jacked up the house and performed some work on the footing under the front door. Thereafter, for a short while, the door worked properly. The Sonniers had similar problems with the back and shower doors, and Bayou made some efforts to alleviate these problems.
Finally, the Sonniers began to notice more serious problems. The siding on the house, which was reverse board and batten plywood, started to rot. Likewise, the front and rear door jambs began rotting. In addition, the Sonniers claim one window was leaking, though there was no evidence to support this claim. Bayou offered to replace some of the rotten panels, but ultimately refused to make any more repairs claiming that all warranties had expired and that the conditions were caused by poor site preparation and excessive moisture at the site.
The Sonniers proceeded with repairs and filed suit against Bayou. Bayou filed an exception of prescription which was denied, and the matter proceeded to trial. The trial court found for the Sonniers and awarded $7,565.95 for materials less $517.80 for certain unnecessary additions, $3,258.00 for labor less $75.00 for unnecessary expenses, and $2,862.58 in attorney fees. Bayou lodged this appeal alleging numerous errors by the trial court.

DISCUSSION
By its first assignment, Bayou contends the trial court erred in finding that the Sonniers had proven a major structural defect due to noncompliance with the building standards as required by the New Home Warranty Act, La.R.S. 9:3142, et seq. We agree.
Though the New Home Warranty Act has been the exclusive remedy for new home buyers for over ten years, the issue before this court is one of first impression. We turn, therefore, to the statute itself for guidance. Fortunately for a civilian court, unlike our common law brethren, this is a comfortable and expected starting point.
La.R.S. 9:3144 provides the following with respect to warranties:
A. Subject to the exclusions provided in R.S. 9:3144(B), every builder warrants the following to the owner:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards.
In this case, the Sonniers filed suit in 1994, some three years after the purchase of their home. Accordingly, the warranty at issue is described in paragraph three of the statute and warrants that the house will be free from "major structural defects due to noncompliance with building standards."
*700 "Major structural defects" and "building standards" are defined terms in the New Home Warranty Act. La.R.S. 9:3143 provides in pertinent part:
For purposes of this Chapter the following words, phrases, and terms shall be defined and construed as follows:
* * * * * *
(2) "Building standards" means the standards contained in the building code, mechanical-plumbing code, and electrical code in effect in the parish, city, or other local political subdivision where a home is to be located, at the time construction of that home is commenced, or, if the parish, city, or other local political subdivision has not adopted such codes, the Standard Building Code, together with any additional performance standards, if any, which the builder may undertake to be in compliance.
* * * * * *
(5) "Major structural defect" means any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable:
(a) Foundation systems and footings.
(b) Beams.
(c) Girders.
(d) Lintels.
(e) Columns.
(f) Walls and partitions.
(g) Floor systems.
(h) Roof framing systems.
The plaintiffs' burden of proof in a civil case is by a preponderance of the evidence: all evidence, direct and circumstantial, taken as a whole must show that the causation or fact sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (La.1971).
Therefore, in order to prevail, the Sonniers must prove by a preponderance of the evidence that the home they purchased from Bayou suffered from a major structural defect due to noncompliance with the building standards. While we can ascertain from the record that the Sonniers' home had defects, we cannot determine whether those defects arose from noncompliance with the building standards.
The parties argue extensively about whether the use of "scabs" (extra two by four nailers on floor joists), or the deteriorating siding, or other defects constitute major structural defects. The trial court found that one or all of these defects did constitute a major structural defect. Without commenting on the propriety of that decision, we note that such a determination alone does not make Bayou liable under the warranty.
The statute requires that the "major structural defects" be caused by "noncompliance with the building standards." The statute defines building standards as either the building code in effect in the parish, city or other local political subdivision where the home is located or, if no such code exists, the Standard Building Code. The Standard Building Code is designated by La.R.S. 40:1722 to be "[t]he Standard Building Code-1973 Edition with 1975 Revisions as published by the Southern Building Code Congress."
We have carefully examined the record and find only two references to building standards of any kind. The record reflects that Bayou has been given a code-plus rating by the American Plywood Association. The only other reference is a question directed to David Lee Ravey, the carpenter who repaired the Sonniers' house, asking him to outline how Bayou had violated the Standard Building Code. Unfortunately, his answer is vague and general and does not reference the code. In any event, since Mr. Ravey was not qualified as an expert, is not a licensed contractor, and his education is in wildlife management, his opinions relating to compliance with the Standard Building Code have little evidentiary value.
The Sonniers introduced no building code, local or standard, into the record. Therefore, there was no evidence before the court to enable it to determine whether the defects in the home were "due to noncompliance with the building standards." Accordingly, the Sonniers failed to carry their burden of proof *701 under the statute. The trial court's ruling to the contrary is clearly wrong.
As our determination of this issue is dispositive of the case, we pretermit discussion of Bayou's remaining assignments of error.

CONCLUSION
For the foregoing reasons the judgment of the trial court is reversed. All costs of this appeal are taxed to plaintiffs-appellees, Gerald and Patsy Sonnier.
REVERSED.