745 So.2d 653 (1999)
Robert Durward THORN and Sharon Cathey Thorn, Plaintiffs-Appellees,
v.
Huey CASKEY, d/b/a Caskey Home Builders, Defendant-Appellant, and
The Ohio Casualty Insurance Co., Defendant-Appellee.
No. 32,310-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*655 Eskridge E. Smith, Jr., A Law Corporation by Eskridge E. Smith, Jr., Linda S. Blackman, Bossier City, Counsel for Defendant/Appellant, Huey Caskey, d/b/a Caskey Home Builders.
James D. Hall, Bossier City, Counsel for Plaintiffs/Appellees, Robert Durward Thorn and Sharon Cathey Thorn.
Before NORRIS, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from Huey Caskey's, Defendant's ("Caskey"), failure to complete the construction of Plaintiffs', Robert Durward Thorn's and Sharon Cathey Thorn's ("the Thorns"), home according to a turn-key contract ("the Contract") entered into by the parties. Additionally, the Thorns alleged several defects in the home resulting from Caskey's failure to comply with the specifications of the Contract and applicable building codes. The Thorns also sued The Ohio Casualty Insurance Company ("Ohio Casualty") under the general liability policy issued by it to Caskey. The trial court awarded damages to the Thorns in the amount of $37,887.89, together with attorney fees in the amount of $7,500. The trial court also found that any claims for bodily injury were not recoverable under La. R.S. 9:3141, et seq, the New Home Warranty Act ("NHWA"), and were, therefore, denied. The claims against Ohio Casualty were dismissed, with the trial court's finding of no coverage under the general liability policy.
Caskey appeals the judgment of the trial court with regard to its award of damages to the Thorns, asserting the following five assignments of error: (1) the trial court erroneously concluded that, pursuant to the NHWA, proper notice and opportunity to repair were provided to Caskey; (2) the *656 trial court erroneously found that Caskey did not timely or reasonably make an offer to complete the construction of the home; (3) the trial court erroneously found that the Thorns established by a preponderance of the evidence that there were defects caused by failure to follow applicable building standards; (4) the trial court erroneously found that the Thorns met their burden of proving by a preponderance of the evidence that damages were incurred as a result of Caskey's alleged breach of contract or warranty; and (5) the trial court erroneously awarded excessive damages, failing to consider the Thorns' duty to mitigate their damages and the improvements, additions and expenses incurred which exceeded the allowed specifications and description of materials and agreed-upon changes. The Thorns appeal the portion of the judgment which dismissed their claim against Ohio Casualty. For the reasons stated herein, the judgment of the trial court is amended and, as amended, affirmed.

FACTS AND PROCEDURAL BACKGROUND
On February 17, 1993, the Thorns and Caskey entered into the Contract for the construction of the Thorns' home at 4112 Ashford in Benton, Louisiana.[1] Pursuant to the Contract, Caskey was to provide all labor and material for completion of the home, "as specified in plans, and as agreed upon between owner and builder, with the exception of appliances," for the sum of $110,000. The Contract contained no date for completion of the project and the section of the Contract with regard to when payments would be made to Caskey was not complete. The Thorns provided Caskey with drawings and building specifications prepared by Guy Henry, an architectural engineer and a new home builder, which were incorporated into the Contract.
Construction began around June 1, 1993, and, according to the Thorns, was supposed to be completed in 90 to 100 days. Construction continued through September 1993 and Caskey received payments from the Thorns totaling approximately $66,550. Additionally, the Thorns had paid for materials and labor themselves totaling $7,276.88 which, when added to the payments made directly to Caskey, equal approximately 67 percent of the contract price.
Caskey then requested an additional payment from the Thorns. The Thorns told Caskey that they would pay him the final payment when the home was complete. Around the first part of October 1993, Caskey did not return to the construction site and refused to do any further work until he was paid. At that point, the home was 90 to 95 percent complete. After Caskey abandoned the job, the Thorns made several verbal requests of him to return and complete the house. The testimony reveals at least one call from Mr. Thorn and one from Mrs. Thorn wherein Caskey indicated that he would not return until he was given another payment.
On October 18, 1993, Mrs. Thorn, with the assistance of counsel, sent a letter by certified mail to Caskey making formal demand that he return to the site, complete the construction and correct numerous defects. Attached to the letter was a list of 33 work and repair items. In the letter, Caskey was given five days to respond to the request. Caskey received the letter on October 22, but did not respond within five days. Mrs. Thorn also notified the Bossier Parish District Attorney's office and made a written complaint to the Better Business Bureau.[2] In the interim, *657 the Thorns hired Roy Hicks, an electrician by trade, to perform certain work on the home. On November 5, a meeting was held at the Thorns' home to discuss resolution of the dispute. At this meeting, Caskey offered to complete the work, but the Thorns refused and indicated that Caskey would not be allowed to do any further work for them.

DEFECTS IN THE HOME
The Thorns claim that even before Caskey left the job, they had noticed numerous defects in the home which they called to Caskey's attention. The exterior walls were beginning to bow, window openings had bulges in them and the walls and doors were not square. Caskey attempted to correct the bowing walls by hammering wedges between the studs and brick rather than removing the sheetrock to correct the problem. Caskey admitted using utility fir, an inferior grade lumber, in the building process, but blamed Bolinger's Millworks for sending the wrong material. Caskey also admitted using inferior grade lumber in the exterior framing which would account for the bows in the walls. Caskey installed inferior insulation boards to the exterior of the house and constructed the framing of the ceiling joists on 24" centers rather than 16" centers which caused the house to be structurally unsound and not in compliance with FHA or VA standards. Additionally, the Southern Building Code requires that 2×8's be used in certain spans, as did the specifications for the house. Caskey used 2×6's instead of 2×8's in the ceiling joists of the upstairs bedroom. He also failed to tie the downstairs back wall of the family room to the ceiling joists which, according to the testimony of Guy Henry, is also in violation of the Southern Building Code. Finally, there was sagging in the roof due to a lack of bracing in the roof rafters in the attic.
In addition to structural problems, Caskey deviated from the specifications agreed on by the parties. The plans did not call for a sloped ceiling in the bedroom. The Thorns claim that the sloped ceiling was necessary because Caskey did not frame the bedroom and bathroom according to the specifications.

ACTION OF THE TRIAL COURT
The trial court found that the NHWA was the exclusive remedy of the Thorns and, further, that the Thorns had afforded Caskey reasonable notice and opportunity to repair the defects as required by the NHWA, thereby allowing the recovery of damages as set forth below.
Calculations of the damages were as follows:

a. Payments by Thorns
 to Caskey $ 66,550.00
b. Payments by Thorns
 to suppliers or subcontractors $ 56,844.04
c. Subtotal $122,394.04
d. Payments to Roy
 Hicks $ 8,203.58
e. Estimation of repairs
 by Mack Stanford $ 17,290.27
 ___________
f. Subtotal $148,887.89
g. Less Contract Amount $110,000.00
 ___________
h. Total damages[3] $ 37,887.89

On the issue of insurance coverage under the Ohio Casualty policy, the trial court found in favor of Ohio Casualty. Specifically, the trial court found that since the Thorns' claims were "made under the bodily injury provisions of the policy" and since the "policy was issued to Mr. Caskey to protect him in the event any such damages arose," then the policy "does not inure to the benefit of the Thorns."

*658 DISCUSSION

We must first address the initial finding of the trial court that the NHWA is the exclusive remedy available to the Thorns in the present matter. There is limited jurisprudence interpreting the NHWA and the issue of its exclusivity is one of first impression.[4]
In their petition for damages, the Thorns assert a claim pursuant to the NHWA and, alternatively, for breach of contract. In Graf v. Jim Walter Homes, Inc., 97-1143 (La.App. 1st Cir.5/15/98), 713 So.2d 682, the court declined to address the issue of whether the NHWA would exclude a new home owner from bringing a breach of contract claim given a different factual situation than was presented in that case. After careful analysis of the NHWA and in light of the facts of this particular case, we find legal error in the trial court's determination that the NHWA was the Thorns' exclusive remedy. In this particular factual situation, we find that the Thorns' breach of contract claim was valid. Section 3150 of the NHWA provides:
This Chapter provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply. Nothing herein shall be construed as affecting or limiting any warranty of title to land or improvement. (Emphasis ours.)
The plain language of the above-quoted provision reveals that only claims regarding warranties of the builder or defects (redhibitory or otherwise) are excluded. It is undisputed in the present case that Caskey did not complete construction of the Thorns' home. Indeed, many items of their alleged damages are related to the non-completion of the home rather than repair of defects due to Caskey's faulty workmanship.
Section 3141 of the NHWA states the purpose of the NHWA as follows:
The Legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of home owners' insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing for uniform building standards in those parishes and municipalities that have not yet adopted building codes; by requiring that all new residential buildings comply with building standards; by adopting provisions that clearly state the scope and the time of warranties; by providing for insurance protecting home owners from breaches of warranty; and by making the required warranties mandatory in most cases.
The NHWA, therefore, was designed to protect the owner from faulty workmanship, but not to insure completion of the construction of a home under the terms of the contract between the owner and builder. Accordingly, we find that where the builder abandons construction of the home and fails to fulfill his obligations under the contract, he may be found liable in an action for breach of contract; however, he may also be liable for breach of the warranties outlined in the NHWA. Our finding that the Thorns' breach of contract claim was, in fact, a valid one, becomes significant in determining which damages proven at trial are recoverable and under what theory (breach of contract or NHWA). The damages issue concerning defects versus completion of the home is discussed, *659 infra, in Caskey's fifth assignment of error.
Since we find the trial court's finding of exclusivity of the NHWA to be an error of law, we will review de novo those issues regarding breach of contract. See Carter v. Dixie Elect. Membership Corp., 30,483 (La.App.2d Cir.8/21/98), 717 So.2d 691; Collier v. Southern Builders, Inc., 606 So.2d 885 (La.App. 2d Cir.1992). All other factual findings of the trial court, contained in assignments of error numbers 1 through 4, will be reviewed under the "manifest error" standard of review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We now proceed to Caskey's first two assignments of error.
Assignments of error Improper notice and
numbers 1 and 2: opportunity to repair
 under the
 NHWA
La. R.S. 9:3145 provides:
Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, advising him of all defects and giving the builder a reasonable opportunity to comply with the provisions of this Chapter.
Absent compliance with the above notice provision, recovery under the NHWA is precluded. Caskey argues that the Thorns were satisfied with his work, and repair work, until the dispute as to an additional payment arose in early October. It was not until October 23 that he received the letter giving him only five days to return and complete the work. Caskey claims that the Thorns were concerned about timing and the amount of money due Caskey and, therefore, hired Mr. Hicks to complete the work without first giving Caskey a reasonable opportunity to do the same, as required by the statute.[5] Further, Caskey emphasizes that he offered to complete the job at the November 5 meeting at the Thorns' home; however, his offer was flatly refused. This refusal, Caskey claims, denied him a reasonable opportunity to repair and, therefore, precludes the Thorns' recovery under the NHWA. We disagree.
As the trial court noted in its reasons for judgment, the Thorns made several verbal requests to Caskey that he return and complete the work on their house and make repairs; however, Caskey repeatedly refused to return to the job site. Since the verbal requests were being ignored by Caskey, the Thorns sought the assistance of counsel and made formal written demand to Caskey to return to the job, giving Caskey five days within which to respond. That letter contained a list of 33 items, of which the Thorns were aware at that time, that needed repairing or completing. It is undisputed that Caskey did not respond in any way within the five-day period. While it is true that on November 5 Caskey did offer to return and complete the job, that was several weeks after the expiration of the five-day period afforded him by the Thorns' letter. We note that the NHWA requires that the builder be afforded a "reasonable opportunity to comply with the provisions" of the chapter. While it may not be reasonable to expect Caskey to actually complete the necessary repairs within a five-day time period, we note that the Thorns' letter required only a response from him within the five days as to whether he would return to complete the work. We find that five days within which to respond to such request was reasonable. Finally, we agree with the trial court's conclusions that (1) Caskey told the *660 Thorns he wasn't coming back; (2) he received the letter giving him five days to return to the job; and (3) he failed to comply.
As previously stated, the Thorns' letter to Caskey contained a listing of 33 items which were in need of repair or completion. Caskey contends that since this list did not contain each and every defect which was ultimately proven at trial, the notice was deficient. Again, we disagree. In Graf, supra, the first circuit found that where the plaintiff sent written notice to the builder containing a list of defects known to the plaintiff at the time of the notice, the fact that additional defects and necessary repairs were discovered and proven at trial, which were not contained in the plaintiffs notice, did not preclude recovery under the NHWA for those additional defects. The court referenced Section 3144 of the act, regarding the purpose of the NHWA, stating:
Furthermore ... [t]he legislation was enacted to provide warranties for the purchasers and occupants of new homes in Louisiana. It was not enacted to allow a builder to shield himself from liability for numerous defects, which he had actual knowledge of and actual time to remedy, merely because the defects were not itemized in the timely written notice.
We find, therefore, that the requirements of reasonable notice and opportunity to repair, as required by the NHWA, were satisfied as to all defects proven by the Thorns at trial.
Assignments of error Failure to meet burden
numbers 3 and 4: of proving defects
 under the
 NHWA
Section 3143(5) of the NHWA provides:
"Major structural defect" means any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable:
(a) Foundation systems and footings.
(b) Beams.
(c) Girders.
(d) Lintels.
(e) Columns.
(f) Walls and partitions.
(g) Floor systems.
(h) Roof framing systems.
Section 3144 of the NHWA sets forth the warranties flowing from builder to owner as follows:
A. Subject to the exclusions provided in R.S. 9:3144(B), every builder warrants the following to the owner:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards.
In addition to violations of applicable building codes, deviations from the plans and specifications for construction of the home are also recoverable under the NHWA. In Graf, supra, the court noted that the contract plans and specifications created certain performance standards which were actionable under the NHWA. Citing Section 3143(2) of the NHWA, which defines building standards to include "any additional performance standards, if any, which the builder may undertake to be in compliance," the court in Graf noted that to hold that that provision did not include the contractual plans and specifications between the builder and owner would *661 lead to "unconscionable results" allowing the builder to avoid its contractual obligations by "merely satisfying the minimum standards established" by the NHWA.
There are certain items which are specifically excluded from a builder's warranty under the NHWA which are set forth in Section 3144. The following exclusions are relied on by Caskey in his argument:
(B)Unless the parties otherwise agree in writing, the builder's warranty shall exclude the following items:
(4) Any damage to the extent it is caused or made worse by any of the following:
(b) Failure by anyone other than the builder or any employee, agent, or subcontractor of the builder to comply with the warranty requirements of manufacturers of appliances, equipment, or fixtures.
* * *
(d) any change of the grading of the ground by anyone other than the builder, or any employee, agent, or subcontractor of the builder.
(13) Any condition which does not result in actual physical damage to the home.
Specifically, Caskey argues that the roof structure of the garage, which he admits he constructed on 24" centers rather than 16" centers as provided for in the plans, does not affect the structure, its safety or livability. This argument is without merit. Caskey admitted deviating from the plans which, according to Guy Henry's testimony, resulted in a violation of the Southern Building Code.[6] Additionally, this defect is in the "roof framing system" which is specifically covered under the NHWA. Mr. Henry testified as to specific areas of concern in the Thorns' home, including improper bracing of the ceilings joists and roof rafters that resulted in the sagging roof, all of which violate the Southern Building Code. Specifically, Mr. Henry testified that Caskey's work was not in compliance with the Southern Building Code in his use of 2×6's, rather than 2×8's, in the upstairs ceiling joists. He also testified that such errors would have resulted in the home not passing FHA or VA standards and that it would not be structurally sound. Clearly, the Thorns met their burden, under the NHWA, of proving defects with regard to the ceiling and roof structures.
Caskey also claims that the defective septic system and changes in the grading of the lot are excluded damages under Sections 3144(B)(4)(b) and (d), supra. A correct reading of those provisions, however, reveals that the damages which are excluded from the builder's warranty, as imposed by the NHWA, are those which are "caused or made worse by" actions of "anyone other than the builder, or any employee, agent, or subcontractor of the builder." (Emphasis ours.) As such, Caskey does, in fact, warrant the work of his subcontractor in installing the septic system and the grading work done on the lot.
*662 Additionally, Caskey admitted under cross examination that he used the wrong insulation, that a portion of the house was out of square and that he had used substandard materials. Moreover, Caskey admitted that, as a result of faulty construction, certain walls in the home were bowing out. Our review of the record supports the Thorns' recovery for these defects. This assignment of error is without merit.
Assignment of error number 5: Calculation
of damages

A. Improvements, changes and additions
Caskey challenges the trial court's calculation of damages, asserting that the trial court failed to differentiate between items which were necessary repairs to the home and those which reflect "improvements, changes and additions," which were items over and above the allowances as agreed to at the time the Contract was entered, i.e., items which the Thorns selected and which cost more than the amount allowed in the original agreement. He argues that he was not responsible for expenses or costs that exceeded the bid or Contract allowance. We find merit in this argument. La. R.S. 9:3149(A) provides:
If a builder violates this Chapter by failing to perform as required by the warranties provided in this Chapter, any affected owner shall have a cause of action against the builder for actual damages, including attorney fees and court costs, arising out of the violation. The damages with respect to a single defect shall not exceed the reasonable cost of repair or replacement necessary to cure the defect, and damages with respect to all defects in the home shall not exceed the original purchase price of the home. (Emphasis ours.)
As noted by the court in Graf, supra, the measure of damages in an action on a contract to build is generally the cost of repairs, when a thing can be repaired. We agree with the first circuit that the measure of damages under the NHWA, "reasonable cost of repair," should not be different than under an action on a contract to build. Reasonable cost of repair does not include items which are clearly upgrades, improvements or additions to the plans and specifications to which Caskey did not agree.
After careful review of the documentary evidence, we find the trial court's inclusion of several items of damages, characterized by the Thorns as credits, to be error.[7] Outlined below are those items, with their corresponding values, which we find are "improvements, changes and additions" and should be "credited" to Caskey (these "credits" to Caskey are in addition to those already taxed against the Thorns in their affidavit, P-14):
1. Landscaping: P-14 reflects that the Thorns paid $1,204.69 for landscaping against a bid allowance of $1,500. Invoices attached to P-8, however, reflect an additional $3,523 paid to Billy Foster for yard work. Caskey is, therefore, entitled to a credit in the amount of $3,227.69 ($1,204.69 + $3,523$1,500 = $3,227.69)
2. Cabinets: P-14 reflects a credit due the Thorns for cabinet work. The invoice from LaBorde, attached to P-8, clearly indicates "extras," which were not included in the plans, in the amount of $2,743. That amount is, therefore, credited to Caskey.
3. Fireplace: P-14 indicates a credit due the Thorns in the amount of $1,593.35 against a bid allowance of $2,299.78. As Caskey points out, however, that estimate was not provided *663 to the Thorns until April 3, 1995. This clearly could not have been the bid allowance and we can not allow the Thorns to benefit from this late estimate. Since we can find no documentary evidence of the actual bid allowance, we subtract $1,593.35 from the damage award.
4. Wallpaper: P-14 indicates an overage on this item. Additional invoices attached to P-8, however, indicate that $1,206 was paid to Barbara Marcinik for hanging the wallpaper. We agree with Caskey that this amount should be added to the overage stated in P-14.
Based on the above-described items, the total amount credited to Caskey is calculated as follows:

$3,227.69 (Landscaping)
$2,743.00 (Cabinets)
$1,593.35 (Fireplace)
$1,206.00 (Wallpaper hanging)
_________
$8,770.04 Total credit to Caskey

While Caskey does challenge several other items of damages as claimed by the Thorns, we find no manifest error in the trial court's assessment of the same. Absent more specific evidence of the actual bid allowances, we are constrained to accept the factual findings of the trial court.[8]

B. Defects versus cost of completion of the home
As previously stated, the NHWA covers breaches of a builder's warranties to the owner in the form of defective workmanship which violates building standards and which results in damage to the home. We do not read the NHWA to cover the cost of completion of a home where the builder fails to complete the job. Such damages are more appropriately addressed in a breach of contract claim. Since the Thorns did include a claim for breach of contract in their petition and since we have determined that such claim is viable in conjunction with the claim made under the NHWA, we will look at the record de novo to determine if such claim was proven at trial and, if so, what damages are appropriate.
La. C.C. art. 2769 provides:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
Where a building contractor, through his own negligence, is unable to complete the contract and thereupon abandons it, he is liable for the loss resulting, including the amount reasonably expended in minimizing such loss. Hammond Oil & Dev. Co. v. Feitel, 115 La. 132, 38 So. 941 (1905). If remedial work is required to complete a project in accordance with plans and specifications, the cost of such work is borne by the party at fault. O & M Const., Inc. v. State, Div. of Admin., 576 So.2d 1030 (La.App. 1st Cir.1991), writ denied, 581 So.2d 691. Under article 2769, the burden is on the Thorns to prove the cost of completion by a preponderance of the evidence. Id.
Our review of the record reveals overwhelming evidence that Caskey failed to do the work he contracted to do when he abandoned the Thorns' home construction site and refused to return, despite efforts on the part of the Thorns to have him finish the home. We find, therefore, that any damages sustained by the Thorns in securing the completion of their home *664 are recoverable under article 2769 as "losses [which] ensue[d] from [Caskey's] noncompliance with his contract." Accordingly, we need not engage in the task of differentiating between which of the asserted damages are the result of Caskey's breach of warranty under the NHWA and those which are the result of his breach of the contract in not completing the home.

C. Remaining damages
Before addressing the remaining specific items of damage, we note that the trial court's determination of damages is a factual finding and shall not be set aside absent an abuse of discretion. Rosell, supra; Degeneres v. Burgess, 486 So.2d 769 (La.App. 1st Cir.1986). Mindful of that standard, we now address the remaining items of damage challenged by Caskey. First, having determined that it is unnecessary to separate those items which were repairs and those which were actually completion of the house, we find no manifest error in the trial court's acceptance of the $8,203.58 paid to Roy Hicks.
Second, Caskey challenges the $17,290.27 awarded to the Thorns based on the testimony and estimate of Mac Sanford, a contractor who gave the Thorns an estimate on the future work necessary to repair and complete the home. Caskey argues that Mr. Sanford's testimony reveals that the figure was merely "a guess" and, therefore, is insufficient to support an award in that amount. After careful review of the testimony and documentary evidence, we must disagree. While Mr. Sanford did testify that he was not making a bid on the job and that his figures were estimates or guesses as to what the work might cost to perform, we find it significant that he visited the site on two occasions and prepared a "bid memo" for the Thorns reflecting particularized items in need of repair and his corresponding estimate of the cost of each itemized repair. Additionally, he incorporated a "profit" of $2,000 into the total figure. Based on the evidence, we cannot say that the trial court abused its discretion in awarding the Thorns $17,290.27 based on Mr. Sanford's estimate.

INSURANCE COVERAGE
The Thorns assert two assignments of error concerning insurance coverage issued by Ohio Casualty to Caskey, both of which claim that the trial court erroneously dismissed the claims against Ohio Casualty by concluding that the policy did not provide coverage for the claims asserted by the Thorns. On appeal, we are concerned only with the property damage sustained by the Thorns due to Caskey's poor workmanship.
The policy issued by Ohio Casualty to Caskey was a Contracting General Liability Policy which contains general insuring language providing coverage for "bodily injury" or "property damage" caused by an "occurrence" that takes place in the "coverage territory" and during the policy periods. The policy defines property damage as "physical injury to tangible property, including all resulting loss of the use of that property." The policy also contains a "products-completed operations hazard" provision with an aggregate limit of $300,000. The policy sets forth its limits of insurance as follows:
C. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."
Section V, No. 11, of the policy defines "products-completed operations hazard":
(a) "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your work" except:
(1) Products that are still in your physical possession; or

*665 (2) Work that has not yet been completed or abandoned.

(b) "Your work" will be deemed completed at the earliest of the following times:
(1) When all of the work called for in your contract has been completed.
(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.
The Ohio Casualty policy defines "your work" as follows:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work";
. . .
The policy also contains a "work-product" exclusion which reads as follows:
This insurance does not apply to:
* * *
k. "Property damage" to "your product" arising out of it or any part of it.
l. "Property damage" to "your work" arising out of it or any part of it and included in this "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
In Allen v. Lawton and Moore Builders, Inc., 535 So.2d 779 (La.App. 2d Cir.1988), we addressed this very issue. In Allen, we held that a similar exclusion in a general liability policy, also issued by Ohio Casualty, negated coverage for construction defects in the home built by the insured. Under almost identical facts, we stated:
Plaintiffs' claims against the defendants for which insurance coverage is asserted are for defects in the construction of the house and lot constructed by the defendant-insured, J.R. Moore, Inc. The house and lot are the contractor's work or work product. Plaintiffs do not allege that any damage was caused to any other property. The exclusion clearly excludes coverage for property damage to the named insured's products, the house and lot, and for property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith, the work in this case being the construction of the house and lot. The damages claimed and relief sought by plaintiffs are all consequences of the alleged defective workmanship and defects in the work performed by the insured, for which the policy provides no coverage.[9]
*666 Ohio Casualty argues that this type of policy was not intended to insure the quality of the builder's work, that there are other types of insurance policies available for such coverage and that the work-product exclusion was drafted to prevent just this situation. We agree.
First, there is an abundance of jurisprudence interpreting and explaining the work-product exclusion. A general liability policy with a work-product exclusion clause has uniformly been held not to insure any obligation of the policyholder to repair or replace his own defective work or defective product. See Allen, supra; Lewis v. Easley, (La.App. 2d Cir.1993), 614 So.2d 780; Vobill, supra, n. 10; Swarts v. Woodlawn, Inc., (La.App. 1st Cir.1992), 610 So.2d 888; Korossy, supra. These exclusions plainly indicate that the policy is not intended as a guarantee of the quality of the insured's products or work. Louisiana jurisprudence has consistently recognized that liability policies are not performance bonds. Allen, supra; Magill v. Owen Construction Co., Inc., 434 So.2d 520 (La.App. 2d Cir.1983); Breaux v. St. Paul Fire & Marine Ins. Co., 345 So.2d 204 (La.App. 3d Cir.1977). The defects for which recovery is sought, in the case sub judice, fall squarely within the risk specifically excluded from coverage by the exclusions (k) and (l) of the policy. Consequently, we hold that the Ohio Casualty policy does not provide coverage for damages suffered by the Thorns as a result of defects in the house which were a result of Caskey's faulty workmanship.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to reflect a credit to Caskey in the amount of $8,770.04. The total award to the Thorns is reduced by that amount, yielding a recovery for the Thorns in the amount of $30,117.85, together with attorney fees in the amount of $7,500. The remainder of the judgment is affirmed. Costs are to be split equally between Caskey and the Thorns.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Mr. Thorn was actually a builder himself, having built two previous homes where he personally had supplied all materials. Caskey assisted Mr. Thorn with carpentry work on the two previous constructions. On this particular home, Mr. Thorn suggested that they use a turn-key contract.
[2] On October 26, 1993, Caskey was notified by the Bossier Parish District Attorney's office that the Thorns had made a criminal complaint against him. Caskey was told to appear for an appointment with the DA on November 9. Caskey appeared at the November 9 meeting with the DA, during which the matter was determined to be civil in nature, and the DA's office would not continue any investigation of the complaint.
[3] The parties agree that the trial court made an error in totaling the damages. The correct amount is $38,887.89. From this point forward, in the opinion, we will use the correct figure.
[4] Only two other cases have discussed the NHWA's exclusivity, one of which determined that the NHWA excluded the redhibitory remedy of rescission and the other found that the fact that the defendant was a builder and the plaintiff was an owner did not, in and of itself, establish conclusively that the only remedy available was the NHWA. See Rodriguez v. Sunrise Homes, Inc., 532 So.2d 952 (La. App. 5th Cir.1988) and Leon v. Deters Custom Homes, Inc., 97-0772 (La.App. 1st Cir.4/8/98), 711 So.2d 346, respectively.
[5] Caskey argues that the Thorns' hiring of Mr. Hicks to perform work on the house was a breach of the Contract and also precludes recovery under the NHWA. Our review of the record reveals no specific date on which Mr. Hicks actually began work at the site of the Thorns' home. In any event, we view the Thorns' actions as responsible in not only an attempt to complete the construction of their home, but to mitigate damages as well. See 9:3144(B)(5) which excludes from a builder's warranty "[a]ny loss or damage which the owner has not taken timely action to minimize."
[6] Caskey argues that since the Southern Building Code was not introduced at trial, the Thorns failed to meet their burden of proving defects under that code. In support of his argument, Caskey's counsel cited the case of Sonnier v. Bayou State Mobile Homes, Inc., 96-1458 (La.App. 3d Cir.4/2/97), 692 So.2d 698, writ denied, 97-1575 (La.10/3/97), 701 So.2d 201. We find that case to be factually distinguishable from the instant case. In Sonnier, there was a complete lack of evidence as to whether the defects alleged constituted violations of any building standards whatsoever. There was no expert testimony concerning building standards or code. The only testimony in Sonnier was from a lay witness with a background in wildlife management whose opinion, as characterized by the court, had little evidentiary value regarding compliance with the Standard Building Code. In the case sub judice, there was expert testimony concerning Caskey's noncompliance with specific provisions of the Southern Building Code. We find this evidence sufficient to support the trial court's finding of violations of that code, despite the failure to introduce the actual document.
[7] At this juncture, we believe it necessary to note that the items for which we give Caskey credit may reflect costs of completion of the home in addition to repair of defects caused by Caskey's faulty workmanship. As will be discussed in the following section of this opinion, since we find that the Thorns are, in fact, entitled to recover for the reasonable cost of completion of the home as well, we do not make that distinction here.
[8] We note that in an action on a building agreement which is for a fixed amount (like the contract in the present case which specified that the contract price was $110,000), as a general principal, the builder is entitled only to the fixed amount regardless of his actual cost in building the home. If the buyer makes changes in the plans and specifications which increases the final cost of construction, the builder bears the burden of proving both the buyer's authorization and the cost of any changes made. Quinn-L Corp. v. Elkins, (La. App. 1st Cir.1987), 519 So.2d 1164, writ dismissed, 520 So.2d 415.
[9] At least two other circuits agree with our position. See Vobill Homes, Inc. v. Hartford Accident and Indemnity Co., 179 So.2d 496 (La.App. 3d Cir.1965), writ denied, 248 La. 698, 181 So.2d 398 (1966); Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, writ denied, 95-1536 (La.9/25/95), 660 So.2d 878.