753 So.2d 980 (2000)
JOE BANKS DRYWALL & ACOUSTICS, INC., Plaintiff-Appellee,
v.
TRANSCONTINENTAL INSURANCE COMPANY, Defendant-Appellant.
No. 32,743-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*981 Gold, Weems, Bruser, Sues & Rundell by Edward E. Rundell, Charles D. Elliott, Alexandria, Counsel for Appellant.
Cotton, Bolton, Hoychick & Doughty by John B. Hoychick, Rayville, Counsel for Appellee.
Before WILLIAMS, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
This appeal arises from a default judgment against Defendant, Transcontinental Insurance Company ("Transcontinental"), finding coverage under a general commercial liability policy. For the reasons set forth below, we reverse the trial court's judgment.

*982 FACTS
On October 6, 1998, Plaintiff, Joe Banks Drywall & Acoustics, Inc. ("Joe Banks"), filed suit against its insurer, Transcontinental, under a general commercial liability policy. Under a "products-completed operations hazard" clause, the policy provided coverage for property damages that an insured became legally obligated to pay. Joe Banks asserted in its petition that it was legally obligated to pay such an amount as the result of a Mississippi arbitration award, which entitled it to be indemnified by Transcontinental for that amount. Transcontinental failed to answer Joe Banks' petition and preliminary default was entered on December 14, 1998. Evidence for the motion for confirmation of default was taken January 25, 1999.
Mr. Herbert Joel Banks, Jr., the president and chief executive officer of Joe Banks, testified that the claim underlying the arbitration arose when the sheet vinyl flooring Joe Banks installed during the construction of a hospital in Jackson, Mississippi ("Mississippi job"), became stained.[1] Mr. Banks testified that, although to his knowledge a cause for the staining was never determined, his company was brought into the arbitration, nonetheless. Mr. Banks further testified that, following the arbitration, the general contractor of the Mississippi job was awarded $25,983.43 against Joe Banks for the damage to the flooring. Mr. Banks stated that Joe Banks paid the amount of the award to the general contractor by check written on its business account and mailed to the general contractor. During Mr. Banks' testimony, the check and a copy of the insurance policy issued by Transcontinental to Joe Banks were offered and introduced into evidence.
After hearing the testimony and receiving the evidence, the trial court confirmed the default judgment in favor of Joe Banks and against Transcontinental in the amount of $25,983.49. Transcontinental has appealed.

DISCUSSION
Assignment of Error No. 1: The minutes of court did not reflect the entry of a preliminary default as required by Code of Civil Procedure Article 1701.
We find no merit to this assignment of error. Subsequent to the initial lodging of the appellate record and the filing of Transcontinental's brief, the appellate record was supplemented with corrected minutes from the trial court showing the entry of a preliminary default on December 14, 1998.
Assignment of Error No. 2: The trial court erred in casting Transcontinental in judgment because Joe Banks did not establish facts that supported a finding of coverage under the Transcontinental policy.
In reviewing a default judgment, an appellate court is restricted to a determination of the sufficiency of evidence offered in support of the judgment. La. C.C.P. 1702; Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991). Transcontinental asserts the following complaints in regard to the insufficiency of evidence: 1) Joe Banks failed to prove that there was a demand since it did not file the arbitration award into evidence and there is no other evidence that a lawsuit was filed against Joe Banks for its work; 2) Mr. Banks' testimony was ambiguous regarding the actual payment made by Joe Banks to the general contractor because Mr. Banks did not testify that the check, which was entered into evidence, was in payment for the stain repairs; and there was no proof that the check was negotiated; 3) The phrase "legally obligated to pay" in the insurance policy requires a finding of fault, but Mr. Banks testified he had no knowledge that Joe Banks was at fault in causing the floor to become stained; 4) There was no testimony concerning the "validity, *983 appealability or enforcement" of the arbitration award in Louisiana; and 5) The policy precludes coverage for claims that the insured pays voluntarily; and, since Transcontinental characterizes the payment in this case as being for a claim for which Joe Banks did not believe it was liable, Joe Banks breached the "cooperation clause" because the payment was voluntary.
We find each of these arguments to be unpersuasive. Mr. Banks' testimony, along with the introduction of the insurance policy and a copy of the check to the general contractor, is sufficient to establish a relationship between the parties and a prima facie case for the obligation upon which Joe Banks sought relief from Transcontinental. There is no legal requirement that the arbitration award be introduced into evidence before a judgment can be entered in favor of Joe Banks. McRay v. Booker T. Washington Nursing Home, 30,399 (La.App.2d Cir.4/8/98), 711 So.2d 772.
There was evidence, through Mr. Banks' testimony, that a suit was filed against Joe Banks for its work and an award rendered against it. We can further glean from Mr. Banks' testimony and the face of the check that it was sent to the general contractor for payment of the arbitration award.
We also conclude that Transcontinental has failed to provide any grounds on which the Mississippi arbitration, under our policy of full faith and credit, would be invalid or unenforceable in Louisiana. Finally, regarding sufficiency of the evidence, we conclude that the payment made by Joe Banks on such a binding award in arbitration is not a "voluntary payment" that would preclude coverage under the Transcontinental policy.
Assignment of Error No. 3: The trial court erred when it cast Transcontinental in judgment because the policy does not provide coverage for the Joe Banks claims.
Transcontinental asserts two theories under which coverage is excluded. The first theory is that property damage to which the insurance applies must result from an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Transcontinental complains that, because Mr. Banks did not testify that there was any "accident" or negligence for which Joe Banks should be liable, the policy provides no coverage.
We disagree. In Bewley Furniture Company, Inc. v. Maryland Casualty Company, 271 So.2d 346 (La.App.2d Cir. 1972), modified on other grounds, 285 So.2d 216 (La.1973), this court recognized that the words "caused by accident" contained in an insurance policy have been held to have a much broader meaning than merely tortious conduct and that courts have declined to limit the meaning of such wording to be an event that happened suddenly or violently. Moreover, any uncertainty or ambiguity in a policy's provisions must be construed against the insurance company. Such policies are to be construed in their ordinary and popular sense, rather than in a limited and technical sense. La. C.C. art.2047; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759; Christ Episcopal Church of Bastrop v. Church Ins. Co., 31,930 (La.App.2d Cir.5/5/99), 731 So.2d 1071. There is no allegation in the instant case that the damage at issue was intentional, and we find that such damage did constitute an "occurrence" under the terms of the policy.
Transcontinental's second theory involves the exclusions under the "products-completed operations hazard" clause. The clause provides:
"Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"....
*984 The exclusions, commonly referred to as the "work-products" exclusions, are for property damage to "your product" and "your work." "Your product" is defined in the policy as:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
1. You;
2. Others trading under your name; or
3. A person or organization whose business or assets you have acquired; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
"Your work" is defined in the policy as:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
The policy excludes any property damage to "your work" arising out of "your work" or any part of it and included in the "products-completed operations" hazard. Transcontinental asserts that, under these definitions, the flooring installed by Joe Banks would be its "product" and its "work" so that the damage to the floor was not covered under the policy.
We agree in part and disagree in part. By comparing and contrasting the definitions of "your product" and "your work," we conclude that the damaged flooring falls under the latter definition because it constitutes materials furnished in connection with work or operations performed by Joe Banks. The vinyl flooring was not merely a "product" manufactured, sold, etc., by Joe Banks, but was an integral part of the work done by Joe Banks in installing flooring in the hospital. Accordingly, the exclusion for "your product" is inapplicable.
It is Joe Banks' position that the "work-product" exclusion is ambiguous and, therefore, unenforceable. This circuit, however, has recently dealt with the exact language of which Joe Banks complains in Thorn v. Caskey, 32,310 (La. App.2d Cir.9/22/99), 745 So.2d 653, wherein a panel of this court held identical language to be unambiguous and, as such, negated coverage for construction defects.
In Thorn, supra, a panel of this court opined that the use of the "work-product" exclusion reflects the insurance industry's intent to avoid the possibility that coverage under a commercial liability policy will be used to repair and replace an insured's defective products and faulty workmanship. A general liability policy containing a "work-product" exclusion has uniformly been held in this circuit not to insure any obligation of the policyholder to repair or replace his own defective work or defective product. Thorn, supra; Allen v. Lawton and Moore Builders, Inc., 535 So.2d 779 (La.App. 2d Cir.1988). See also Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, writ denied, 95-1536 (La.9/25/95), 660 So.2d 878; and W.S. McKenzie & H.A. Johnson, III, Insurance Law and Practice, § 198, at 412 in 15 La. Civil Law Treatise (2d Ed.1996). Louisiana jurisprudence has consistently recognized that liability policies are not performance bonds. Thorn, supra; Allen, supra; Wagner v. Meeks, 98-0464 (La. App. 1st Cir.4/1/99), 730 So.2d 1058; Breaux v. St. Paul Fire & Marine Insurance Co., 345 So.2d 204 (La.App. 3d Cir. 1977); Barr v. Cool-Vue Aluminum, Inc., 439 So.2d 1161 (La.App. 4th Cir.1983); Korossy, supra.
The defects underlying the arbitration award in the instant case refer to property damage to Joe Banks' work that resulted from a stain coming through the material used by Joe Banks. These circumstances fit squarely under the provisions of the policy exclusion for property damage to "your work."
*985 Joe Banks asserts that the policy should cover the accidental property damage, despite the exclusions, due to the policy's allegedly ambiguous "products-completed operations hazard" coverage. Joe Banks cites the case of Mike Hooks, Inc. v. JACO Services, Inc., 95-1485 (La.App. 3rd Cir.5/8/96), 674 So.2d 1125, writ denied, 96-1924 (La.11/1/96), 681 So.2d 1264, which involved the same or similar exclusionary language. The court in Mike Hooks concluded that, while the policy there provided $1,000,000 in coverage for products-completed operations, it then attempted to exclude coverage for this via the exclusion for damage to "your work." Finding the portions of the policy covering products-completed operations to be ambiguous, the court interpreted the terms so as to find coverage. This case was criticized in McKenzie and Johnson, supra, § 186, for finding that the work exclusion apparently took away all of the "products-completed operations" coverage. The treatise observes, and we agree, that the court in Mike Hooks failed to recognize that:
the insurer covered risks unrelated to repair or replacement of the insured's work, such as claims for injury to persons and other property that commonly are asserted to arise out of defective work or products.
Footnote 30, § 186.
Typically, a commercial liability policy divides the hazards to which a commercial enterprise may be exposed into two categories: (1) hazards arising from an enterprise's operations that are not yet complete and from conditions of the enterprise's premises; and (2) hazards arising from an enterprise's completed work that was done away from the enterprise's premises. Obviously, coverage for both categories will be more expensive than coverage for the first category only. Nothing in the policy, however, limits the exclusions discussed above from application to both categories of hazards; and application of the exclusion for property damage to "your work" does not eliminate all risks covered by the products-completed operations coverage. Accordingly, we do not find the Transcontinental policy to be ambiguous in this respect; and we conclude that the policy provided no coverage for the property damage resulting in the arbitration award against Joe Banks.

CONCLUSIONS
For the reasons set forth above, the judgment of the trial court is hereby reversed, and judgment is rendered in favor of Defendant, Transcontinental Insurance Company, rejecting Plaintiff's, Joe Banks Drywall & Acoustics, Inc.'s, claims of liability under the policy at issue. Costs are assessed to Joe Banks Drywall & Acoustics, Inc.
REVERSED AND RENDERED.
NOTES
[1] The origin of the stain was never successfully determined. It apparently seeped up from beneath the vinyl.