713 So.2d 682 (1998)
Bernard GRAF
v.
JIM WALTER HOMES, INC.
No. 97 CA 1143.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*685 Ernest S. Anderson, Slidell, for Plaintiff-Appellee Bernard Graf.
Robert W. Tillery, Hammond, for Defendant-Appellant Jim Walter Homes, Inc.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
Plaintiff Bernard Graf sued defendant Jim Walter Homes, Inc. (JWH) for alleged breaches of its contract to build a "shell" house on plaintiff's property in St. Tammany Parish, Louisiana. Because the contract involved the building of a new residence, plaintiff brought an action couched in terms of contract, redhibition, and remedies pursuant to the Louisiana New Home Warranty Act, (NHWA), LSA-R.S. 9:3141 et seq.
Defendant moved for partial summary judgment, and on February 18, 1994, the trial court ruled that any relief due plaintiff would be limited to the relief provided by the NHWA.[2] Plaintiff did not seek review of that ruling. It is undisputed that plaintiff filed his action within one year following the applicable NHWA warranty commencement date. The posture of the instant casespecifically, the action within one year which made the NHWA warranty extend to "any defect," LSA-R.S. 9:3144 A (1); the plaintiff's failure to challenge the exclusion of his contract claim; and, the lack of any issue of prescriptionmakes it unnecessary for us to address whether the NHWA would exclude a new home owner from bringing a breach of contract claim given a different factual scenario.[3]
*686 Defendant filed a reconventional demand seeking payment of the promissory note given by the plaintiff. Assigning 18 errors, defendant appeals the judgment awarding plaintiff damages and dismissing defendant's reconventional demand. Because our review of the record reveals no reversible error, we affirm.

FACTS
On July 15, 1992, Mr. Graf and JWH entered into a contract in which JWH would construct a house for plaintiff on his property for the agreed upon price of $55,605.00. The plaintiff selected the standard provisions of defendant's "Windwood" model, but the parties agreed to additional specifications which were made a part of the contract. JWH began construction of the house.
On November 5, 1992, Mr. Graf sent a certified letter to JWH giving notice of some alleged defects in the construction. Thereafter, the defendant attempted to repair some of the defects, but the result was not to plaintiff's satisfaction. On May 18, 1993, plaintiff filed suit.
Defendant filed a reconventional demand attempting to accelerate the promissory note executed by plaintiff, the terms of which were the total sum of $151,560.00 paid in 300 installments of $505.20. Plaintiff had made no payments on the house note.
After trial on the merits, the court rendered judgment in plaintiff's favor for $33,003.23, with interest from date of judicial demand, together with attorney fees in the amount of $12,500.00 and court costs. The defendant's reconventional demand was dismissed; plaintiff was allowed a credit for the monthly payments owed from May 15, 1993, until the date of the judgment. Defendant perfected a suspensive appeal; plaintiff neither appealed nor answered the appeal.

NEW HOME WARRANTY ACT
In 1986, the Louisiana Legislature enacted the NHWA for the following purpose:
The Legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of home owners' insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing for uniform building standards in those parishes and municipalities that have not yet adopted building codes; by requiring that all new residential buildings comply with building standards; by adopting provisions that clearly state the scope and the time of warranties; by providing for insurance protecting home owners from breaches of warranty; and by making the required warranties mandatory in most cases.
LSA-R.S. 9:3141.
There is only one reported case decided after trial on the merits concerning the provisions of the NHWA. In Sonnier v. Bayou State Mobile Homes, Inc., 96-1458 (La.App. 3d Cir. 4/2/97); 692 So.2d 698, writ denied, 97-1575 (La.10/3/97); 701 So.2d 201, the court held the plaintiffs failed to carry their burden of proof under the NHWA of major structural defects caused by non-compliance with building standards when they failed to introduce any building code, local or standard, into the record.
Thus, the instant case calls upon us to make first impression interpretations of some of the procedural and substantive provisions of the NHWA.
The 17 assignments of error[4] can be grouped into four categories: 1) those relating *687 to the admissibility vel non of evidence of defects that defendant asserts were not in the required notice, or in the plaintiff's petition, and were admitted by the trial court over the objection of the defendant; 2) those concerning the sufficiency of the evidence of the various defects; 3) those concerning the discretion of the trial court in awarding damages; and 4) those relating to a miscellaneous list of issues, specifically, mitigation of damages, the reconventional demand and right to offset, and legal interest.
Admissibility of Evidence:[5] Throughout the trial, defendant's position was that the certified notice provided by plaintiff did not contain numerous defects that were later discovered and testified to at trial. LSA-R.S. 9:3145 provides:
Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, advising him of all defects and giving the builder a reasonable opportunity to comply with the provisions of this Chapter.
Defendant also relies on two other sections of the NHWA that refer to the notice required by Section 3145, neither of which do we find applicable in this case. Section 3144 B(4)(c) refers to damage "caused or made worse by... [f]ailure by the owner to give written notice by registered or certified mail to the builder of any defect within a reasonable time." The record in the instant case is devoid of any evidence of defects becoming worse after the written notice. Section 3144 B(16) refers to the expiration of the period of insurance coverage. Insurance coverage in the instant case is immaterial as the action is by the owner against the builder, not the insurer.
The trial court disposed of defendant's argument concerning inadequate notice under Section 3145 by concluding that the certified letter dated November 6, 1992, sent to the defendant by the plaintiff, which referenced the alleged defects contained in the inspection report of building inspector Gayle Leaming, complied with the NHWA. We note the certified letter provided JWH an opportunity to remedy the deficiencies several months prior to the defendant's filing suit, but JWH's attempts at repair were unsatisfactory to plaintiff. The court's reasons for judgment indicate the court considered the contents of the written notice along with the testimony that the defendant was apprised of the additional defects prior to trial and had an opportunity to repair same. The court's conclusion that the written notice was sufficient was a reasonable one considering the facts of this case.
Furthermore, the conclusion that Section 3145 was satisfied is consistent with the purpose of the NHWA as stated in Section 3141. The legislation was enacted to provide warranties for the purchasers and occupants of new homes in Louisiana. It was not enacted to allow a builder to shield himself from liability for numerous defects, which he had actual knowledge of and actual time to remedy, merely because the defects were not itemized in the timely written notice.
As to the defendant's objection that the evidence was inadmissible because it was outside the pleadings, the trial court decided the plaintiff's petition gave defendant adequate notice of the general nature, extent, and location of the defects in the house, and that the plaintiff afforded the defendant an inspection of the building. We cannot say the trial court erred in concluding that the defendant had opportunity before trial to obtain additional information about the alleged defects and that the defendant was not *688 unduly prejudiced by the admission of the evidence.
Defendant's assignments of error "A" and "B" are without merit.
Sufficiency of Evidence: The first question posed by defendant's argument on appeal concerning the sufficiency of the evidence is whether the plaintiff had the burden of proving that the defects in the load-bearing portions of the house made it unsafe, unsanitary, or otherwise unlivable.[6] Defendant posits that because the trial court awarded damages for deficiencies in the foundation, floor structure, wall structure, and roof/ceiling structure, plaintiff had the burden of proving not only the violations of the building standards but also that the violations constituted one or more major structural defects as defined in the NHWA. The portions of the NHWA relevant to defendant's argument are Sections 3143(5), 3144 B(13), 3144 A, and 3146.
LSA-R.S. 9:3143(5) provides:
"Major structural defect" means any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable:
(a) Foundation systems and footings.
(b) Beams.
(c) Girders.
(d) Lintels.
(e) Columns.
(f) Walls and partitions.
(g) Floor systems.
(h) Roof framing systems.
LSA-R.S. 9:3144 B(13) provides:
Unless the parties otherwise agree in writing, the builder's warranty shall exclude the following items:
(13) Any condition which does not result in actual physical damage to the home.
LSA-R.S. 9:3144 A provides:
Subject to the exclusions provided in R.S. 9:3144(B), every builder warrants the following to the owner:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards.
(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards.
(3) Ten years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards.
LSA-R.S. 9:3146 provides:
Any action to enforce any warranty provided in this Chapter shall prescribe thirty days after the expiration of the appropriate time period provided in R.S. 9:3144.
Defendant claims on appeal that the plaintiff failed to show a major structural defect because he did not show failure of the foundation, floor structure, wall structure, and roof/ceiling structure that affected their functions to the extent the home became unsafe, unsanitary or otherwise unlivable. The contention that plaintiff has this burden of proof is based on the burden of proof indicated by Section 3144 A(3). See Sonnier v. Bayou State Mobile Homes, Inc., 692 So.2d 698. Urging the Section 3144 A(3) burden of proof *689 is applicable in the instant case, defendant states in brief, "The only rational way to make sense out of Section 3144[A] is clearly to differentiate between Sections 1, 2 and 3 and conclude Section 1 applies to all matters of warranty except as they relate to the systems described in paragraph number 2 of Section 3144[A] and except as they relate to the major structural defects in the designated load-bearing portions of the home [as described in paragraph number 3 of Section 3144 A]." We disagree with defendant's analysis of Section 3144 A.
The plain wording of Section 3144 A(1) establishes a warranty for "any defect due to noncompliance with the building standards" and does not specify any exceptions for the items listed in (2) and (3). Because plaintiff filed his suit within one year of the warranty commencement date, he has no burden of proof further than showing non-compliance with the building standards and the physical damage sustained. It is just common sense to have a warranty that decreases in extent with the passage of time. The builder's decreasing warranties, along with the correlative increasing burden of proof imposed on the owner, is a recognition that the longer it takes an owner to bring his complaints, the more serious the alleged deficiencies should be. The statute also protects the builder against stale claims of an insignificant nature. To require the owner to prove major structural defect within the first year of warranty, as the defendant suggests, would result in absurd consequences: the defects of a more serious nature, which would wreak greater economic hardship on the owner, would be harder to prove than less serious defects that may violate the standards but would not diminish the integrity of the structure.
Additionally, defendant argues that because the foundation, wall structure, floor structure, and roof/ceiling structure are all serving their purpose without any evidence of failure, there was no actual physical damage to the home. This argument is untenable. Apparently, defendant would have us hold that the NHWA requires the home to be almost falling down around its inhabitants before physical damage could be shown. Such a reading of the "physical damage" requirement would be inconsistent with the purpose of the act stated in Section 3141 in favor of purchasers and occupants of new homes. Thus, we agree with the trial court's finding that the defects in the Graf home due to noncompliance with the building standards were so substantial that the structural integrity of the home had been diminished and with the conclusion that the diminution constituted "actual physical damage" as required by the act.
Defendant's assignments of error "C" and "D" are without merit.
Defendant's second argument concerning sufficiency of the evidence poses the question of whether the building contract and attached specifications provided additional performance standards under the NHWA.[7] The statutory provision relied on is Section 3143(2).
LSA-R.S. 9:3143(2) provides:
"Building standards" means the standards contained in the building code, mechanical-plumbing code, and electrical code in effect in the parish, city, or other local political subdivision where a home is to be located, at the time construction of that home is commenced, or, if the parish, city, or other local political subdivision has not adopted such codes, the Standard Building Code, together with any additional performance standards, if any, which the builder may undertake to be in compliance.
It is undisputed that the standards in effect in St. Tammany Parish are provided by the Southern Standard Building Code (SSBC). Defendant's interpretation of Section 3143(2) is a strained reading of that provision. The plain wording, "any additional performance standards ... the builder my undertake" is unambiguous and broad *690 enough to include the contractual undertakings of the builder in the instant case.
Defendant's assertion that the plans and specifications in the contract it entered into with plaintiff should not be considered as "building standards" would lead to unconscionable results: the builder would be able to avoid its contractual obligations by merely satisfying the minimum standards established by the NHWA. In response to this argument by defendant, plaintiff correctly points out that to the extent the NHWA purports to override or nullify the provisions of a duly executed building contract between a builder and a consumer, the legislation would be an impermissible intrusion on the freedom of the parties to contract. U.S. Const. art. I, § 10[1]; La. Const. art. I, § 23; LSA-C.C. art.1971; Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994).
In light of this argument concerning the contract between the plaintiff and the defendant, we would be remiss if we failed to note that, but for the trial court's ruling on the defendant's motion for summary judgment that has become a final judgment, we might be deciding this case pursuant to the obligations undertaken in the contract to the exclusion of the obligations provided by the NHWA. Classification of contracts has occasioned difficulty in the courts when the contract includes aspects of two types of obligations, such as the obligation to do and the obligation to give. Morris & Dickson Co., Inc. v. Jones Brothers Co., Inc., 29,379 (La. App.2d Cir. 4/11/97); 691 So.2d 882, writ denied, 97-1259 (La.9/5/97); 700 So.2d 509. When they are inseparable, one of the obligations must be determined as fundamental and the rules thereunder will control. Id.
Defendant's final argument relating to sufficiency of the evidence challenges the trial court's factual findings of deficiencies in the footings, floor structure, wall structure, and roof/ceiling structure.[8]
The trial court found: 1) that the foundation footings were constructed at a substandard depth and width, contrary to the SSBC and the contract; 2) that the pier straps were cut and the pier caps not property fitted over the piers, contrary to the SSBC and the plans; 3) that some aspects of the flooring were defective, as the floor was water damaged and inadequately nailed;[9] 4) that some of the walls were initially installed 24 inches on center, contrary to the contract provision for 16 inches on center; 5) studs were later added to existing walls making them 12 inches on center, but they were excessively notched, provided no proper additional support, and were not capped to prevent penetration of the wiring; 6) the sheathing board and vinyl siding were not attached to the added studs; 7) the nailing of the wall sheathing was not in compliance with the SSBC; 8) ceiling joists were installed 12 inches on center, not 16 inches on center as per the contract; 9) ceiling joists were cut too short and were improperly nailed to the top plate and the roof rafters; 10) the ceiling beam above the kitchen was improperly installed; 11) the roof rafters were improperly installed; 12) additional roof rafters installed were improperly secured or nailed; 13) sheathing was not nailed to the additional rafters; 14) roof rafters were improperly nailed to the top plate, the ceiling joists, and the roof sheathing; 15) roof braces were *691 installed at less than a 45 degree angle as required by the SSBC; 16) three nails instead of four were used to nail the shingles to the roof; 17) the roof decking was improperly felted; and 18) the roof valley was not flashed properly to prevent leaking.
The crux of defendant's argument attacking the factual findings of defects by the trial court is that the court made erroneous credibility calls and drew improper conclusions from the evidence presented by plaintiff's witnesses. The appellee counters this argument with the reminder that the performance of a builder under the building contract and the presence of defects in a newly constructed home are subject to the manifest error standard of review.
Our review of the record reveals there is conflicting testimony concerning almost all of the deficiencies the trial court found to exist, thus presenting two permissible views of the evidence. When there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). Furthermore, where expert witnesses present differing testimony, it is the responsibility of the trier of fact to determine which evidence is the most credible. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990).
After thoroughly reviewing the record in the instant case, we conclude the trial court's factual findings are amply supported by the record. For example, we note the testimony of Ms. Leaming concerning her initial inspection of the house: "The initial report was done to get an overview of ... problems and where they might lie.... However, since I found no components to be installed correctly, I completed this report with the brief overview.... It was easier to say what was correct than what was not correct, because nothing was correct.... I didn't see anything that was acceptable or up to standards."
Defendant's assignments of error "F," "H," "J," and "L" are without merit.
Discretion in Awarding Damages: The defendant challenges the following awards of damages: $16,421.00 for the foundation; $4,413.23 for the wall structure; and $8,963.00 for the roof/ceiling structure.[10]
LSA-R.S. 9:3149 A provides:
If a builder violates this Chapter by failing to perform as required by the warranties provided in this Chapter, any affected owner shall have a cause of action against the builder for actual damages, including attorney fees and court costs, arising out of the violation. The damages with respect to a single defect shall not exceed the reasonable cost of repair or replacement necessary to cure the defect, and damages with respect to all defects in the home shall not exceed the original purchase price of the home.
In an action on a contract to build, the appropriate measure of damages resulting from the contractor's breach of the implied warranty of good workmanship is generally the cost of repairs when the thing can be repaired. Degeneres v. Burgess, 486 So.2d 769 (La.App. 1st Cir.1986). Under Section 3149 A of the NHWA, the measure is "reasonable cost of repair or replacement necessary to cure the defect"; we do not think the NHWA's use of the word "reasonable" requires a different measure. Furthermore, whether the award is pursuant to a contract or pursuant to the NHWA, our standard of review is the same: the discretion of the trier of fact in determining damages shall not be set aside absent an abuse of discretion. Id.
*692 In urging the above awards should be set aside, the defendant appears to equate "reasonable" with "least expensive," a view we cannot accept. In the instant case the trial court was presented with conflicting estimates of the costs of repair. Our review of the record and our consideration of the arguments of defendant do not convince us that the trial court made "unreasonable" awards for repair. The trial court is granted much discretion in making these awards because the trial court has the opportunity to assess, first hand, the credibility of the witnesses, both lay and expert. Only when the record reveals a clear abuse of this discretion will an appellate court disturb the trial court's award. See Reck v. Stevens, 373 So.2d 498 (La.1979). Accordingly, we will not change the awards made by the trial court for foundation, wall structure, and roof/ceiling structure.
Defendant's assignments of error "G," "K," and "M" are without merit.

Miscellaneous issues:
The first of the remaining issues raised by defendant concerns the alleged failure of the plaintiff to mitigate his damages.[11] Defendant cites the general principle that a plaintiff claiming a right to damages has a duty to mitigate his damages, and that avoidable consequences of a breach of contract are not recoverable. See Electrodata Manufacturing Corporation v. Domed Stadium Hotel, Inc., 362 So.2d 1122, (La.App. 4th Cir.), writ denied, 365 So.2d 825 (La.1978).
Defendant asserts that the plaintiff failed to mitigate his damages because he had the floors carpeted, or otherwise covered, and he had the wall coverings installed despite knowledge of the defects for which he now seeks damages. We cannot agree.
It is clear the contract between the parties called for JWH to furnish a "shell" house; it was anticipated by the parties that the plaintiff would be required to finish the floors and walls before the house would be habitable. Defendant cannot urge now that its own breach of contract barred plaintiff from proceeding with the anticipated finishing. The awards for the repairs to the floors and the walls were within the trial court's discretion, and we will not reduce them for failure to mitigate damages.
Defendant's assignments of error "I" and "N" are without merit.
The second of the remaining issues involves defendant's claim for an offset for the plaintiff's use of the home without making the monthly note payments while suit was pending and the related denial of defendant's reconventional demand to accelerate the promissory note.[12]
Concerning the non-payment and use of the home by plaintiff, the trial court stated:
The Court notes the plaintiff has made no payments on the house note but has continued to reside in his home. The defendant argues they (sic) are entitled to a credit for use for the time plaintiff has occupied the home. The Court notes there is no legal authority for this under the New Home Warranty Act.... [T]he plaintiff has suffered extensive problems and severe inconvenience with his house, thus the Court finds the defendant is not entitled to a set-off or credit for use.
In "Supplemental Reasons for Judgment," the trial court addressed the reconventional demand as follows:
The defendant filed a reconventional demand alleging the entire amount of the *693 promissory note executed by the plaintiff should be accelerated because of non-payment by the plaintiff. For the reasons set out in the original "Reasons for Judgment", the Court finds the note was not in default and should not be accelerated.... However, the plaintiff is still obligated on the note and should only receive a credit for monthly payments owed from May 15, 1993 until this judgment is signed, due to the extensive problems and severe inconvenience the plaintiff has suffered with this house.
In other words, the trial court provided that plaintiff did not have to pay any monthly payments that came due prior to the date of judgment.[13] This denial of defendant's claim for offset and for acceleration of the note is reasonable in light of the extent of the deficiencies in the performance of JWH under the contract and the SSBC. We can infer from the trial court's decision regarding offset and acceleration that the trial court concluded plaintiff had not received what he had contracted for and what he had given his promissory note as consideration for, specifically, a Windwood shell house that met applicable building standards and contractual specifications. The resolution of this issue is consistent with the rule that when a contractor breaches an implied warranty of good workmanship in a building contract damages are awarded to place the purchaser in the position he deserved to be in when the building was completed. See Degeneres v. Burgess, 486 So.2d at 775. Similarly, the plaintiff is entitled to a credit on his obligation to pay consideration for the building until he is placed in the position he deserved to be in when the building was completed.
Defendant's assignments of error "O" and "P" are without merit.
The final argument of defendant addresses the award of legal interest from the date of judicial demand.[14] In support of its argument that legal interest should have been awarded only from the date of judgment, defendant cites Williams v. Louisiana Indemnity Co., 26,887 (La.App.2d Cir. 6/21/95); 658 So.2d 739. However, the holding in that case was that legal interest on awards of penalties and attorney fees does not run until date of judgment. The case does not support defendant's argument in the instant case, where the judgment appealed from awards interest on the damage award from date of judicial demand, together with attorney fees and court costs. The well established rule is that legal interest is due on the principal amount of the judgment no later than from the date of judicial demand on a claim for damages arising out of a breach of contract, regardless of whether the precise amount of the claim is unliquidated, disputed, or not ascertainable with certainty at the time suit is filed. Mini Togs Products, Inc. v. Wallace, 513 So.2d 867 (La.App. 2d Cir.), writ denied, 515 So.2d 447, 451 (La.1987).
Defendant's assignment of error "R" is without merit.
Having found no errors in the trial court judgment, we affirm. We cast appellant for all costs of this appeal.
AFFIRMED.
Fitzsimmons, J., concurs.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] If there are two or more items of damage or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. Everything On Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1239 (La.1993). However, LSA-C.C.P. art. 1915, as amended pursuant to 1997 La. Acts No. 483 § 2, may now allow a partial judgment sustaining an exception of no cause of action. Nevertheless, this court has determined that the amendment to Article 1915 should be applied prospectively to initial rulings, either oral or written, issued on or after July 1, 1997, the effective date of the act. Morgan v. The Earnest Corporation, 97-0869 (La.App. 1st Cir. 11/7/97); 704 So.2d 272, writ denied, 97-3031 (La.2/20/98); 709 So.2d 775.
[3] LSA-R.S. 9:3150 provides:

This Chapter provides the exclusive remedies, warranties, and prescriptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply. Nothing herein shall be construed as affecting or limiting any warranty of title to land or improvements.
Our brethren in the Fifth Circuit have interpreted the provision to exclude the redhibitory remedy of recision. See Rodriguez v. Sunrise Homes, Inc., 532 So.2d 952 (La.App. 5th Cir. 1988). However, in Rodriguez, the plaintiff's action for redhibitory defect was not barred because the statute was declared to have only prospective effect and the damage occurred after the effective date of the NHWA. The exclusivity of the NHWA was again urged in Leon v. Deters Custom Homes, Inc., 97-0772 (La.App. 1st Cir. 4/8/98); 711 So.2d 346, wherein this court stated that the mere fact that the defendant was a builder and the plaintiffs were owners did not establish conclusively that the NHWA was the only remedy available to plaintiffs. However, the issue of exclusivity was not addressed because the Leons alleged facts concerning the drainage problem at their home which stemmed from the defendant's construction of other homes on the property surrounding the plaintiffs' home; those allegations were not covered by the NHWA.
[4] Defendant assigned an eighteenth error as follows:

"Q) The Trial Court erred in awarding counsel for the plaintiff $12,500.00 as attorney fees."
However, in brief, defendant urges that the attorney fees be eliminated if we reverse the trial court judgment or that they be reduced if we reduce the damage awards. Because we are not disturbing the damage awards, we need not address this assignment of error.
[5] The defendant's assignments of error relating to the admissibility of evidence are:

"A) The provisions of R.S. 9:3145 being mandatory, as opposed to discretionary, it was error for the Trial Court to allow the plaintiff-appellee to introduce evidence as to defects which were not included in the letter required to be sent to the builder under R.S. 9:3145."
"B) Considering the mandatory language of R.S. 9:3145 and the provisions of Article 891 and 1154 of the Code of Civil Procedure, it was error for the Trial Court to allow plaintiff-appellee to introduce evidence not within the scope of the original pleadings, despite timely objection."
[6] The assignments of error relating to this issue are as follows:

"C) Given the builder warrants under R.S. 9:3144(3) ten years following the warranty commencement date, the home will be free from major structural defects due to non-compliance with the building standards, it was error for the Trial Court to have concluded actual physical damage within the context of R.S. 9:3144(B)(13) occurred when same is supported only by a belief of eventual failure, but without a finding at the trial of a failure to a load-bearing portion affecting the load-bearing function to the extent the home became unsafe, unsanitary or otherwise unlivable."
"D) Since R.S. 9:3144(B)(13) provides a defense to a builder where no actual physical damage has occurred from any defective condition, it was error for the Trial Court to conclude violations diminished the structural integrity of the house and constituted actual physical damage when no evidence of failure or effect of failure due to any of the alleged violations was proven."
[7] Defendant's assignment of error relating to this issue is as follows:

"E) The Trial Court erred when it held the building contract and specifications set forth an additional performance standard under R.S. 9:3143(2)."
[8] Defendant's assignments of error relating to this issue are as follows:

"F) The evidence clearly preponderates the footings as constructed were not in violation of the applicable building standards and the ruling by the Trial Court is error."
"H) Given the evidence presented to the Court, and considering the sufficiency and preponderance thereof, the Trial Court erred when it held the floor structure was in violation of the applicable standards, specifically water damage and inadequate nailing."
"J) Sufficiency and preponderance of the evidence being key to any determination, the Trial Court committed error by disregarding the very clear proof as shown by the video when it found the wall structure in the home violates the SSBC."
"L) The Trial Court erred when it found there were various defects in the roof structure of the home, the roof covering, and the ceiling joists."
[9] The trial court specifically rejected some of the claimed items of damage to the floor structure, as the court noted that the estimate of repair of all damages to the floor would have totaled $15,983.19, but the court awarded much less.
[10] Defendant's assignments of error relating to the amount of the damage awards are as follows:

"G) Because of the evidence showing clearly the foundation has not failed, under R.S. 9:3149, an award of damages in the amount of $16,421.00 is an unreasonable cost of repair or replacement necessary to cure the defect."
"K) The Trial Court erred when it awarded $4,413.23 in damages regarding the wall structure."
"M) Considering R.S. 9:3149 requires a determination of reasonable cost of repair or replacement, the preponderance of the testimony does not support an award of damages in the amount of $8,963.00 for repair of the ceiling and roof structure and the Trial Court committed error."
[11] The assignments of error relating to this issue are as follows:

"I) Considering the duty of plaintiff-appellee to mitigate his damages and the sufficiency of other testimony, it was error on behalf of the Trial Court to award $3,206.00 to repair the floor structure."
"N) The Trial Court erred when it did not subtract up to $7,500.00 from any award allowed for improper construction regarding floor and wall coverings based on the duty of the plaintiff to mitigate damages."
[12] Defendant's assignments of error regarding this issue are as follows:

"O) The Trial Court erred when it failed to render judgment in favor of Jim Walter Homes, Inc. to the full extent of the reconventional demand filed."
"P) The Trial Court erred when it did not grant Jim Walter Homes, Inc., defendant-appellant, an offset to the maximum amount of the monthly payments not made by plaintiff-appellee which totaled $20,715.25."
[13] On December 16, 1996, the trial court granted a partial new trial to amend the award to state that the plaintiff's first payment was due December 1, 1996.
[14] Defendant's final assignment of error is as follows:

"R) The Trial Court erred when it awarded legal interest from date of judicial demand."