785 So.2d 997 (2001)
Kenneth CRAIG and Rosa Craig, Plaintiffs-Appellees,
v.
ADAMS INTERIORS, INC., Defendant-Appellant.
No. 34,591-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2001.
*999 Jeffrey Lee Little, Shreveport, Counsel for Appellant.
Sidney J. Zeller, UAW-GM Legal Services Plan, Counsel for Appellees.
Jimmy Teague, In Proper Person.
Before NORRIS, WILLIAMS and PEATROSS, JJ.
NORRIS, Chief Judge.
The homeowners, Kenneth and Rosa Craig, sued their general contractor, Adams Interiors Inc. ("Adams"), under the New Home Warranty Act ("NHWA"), R.S. 9:3141-3150, for an allegedly defective custom fireplace. Because the parties had already participated in arbitration concerning design changes and overcharges, Adams filed an exception of res judicata. The District Court overruled this and, after a trial on the merits, rendered judgment in favor of the Craigs for the amount they paid to replace the fireplace, $6,561. Adams now appeals, contesting the denial of its exception of res judicata and the judgment on the merits. For the reasons expressed, we affirm.

Factual background
In 1992 the Craigs hired Adams to build a $123,490 house on Cypress Cove Drive in Benton. Adams's principal, Glen Adams, recommended an expensive Country Flame fireplace because it utilized a fire-box attached to the ductwork and fed hearth heat directly into the central heating system. The Craigs agreed to this; Adams wrote it into the construction contract and hired a masonry subcontractor, Jimmy Teague, to install the firebox and appropriate brick fireplace.
The trial testimony shows that the Craigs, Adams and the subcontractors did not get along well. The Craigs admittedly complained that much of the work was substandard or did not comply with plans. According to Mr. Adams, the Craigs kept changing the plans and generally tried to micromanage or supervise all workers. With regard to the fireplace, the Craigs and Mr. Adams disagreed about how deep the footing should be, whether the fascia *1000 should be sheetrock or brick, and what kind of doors were best. Near the end of construction, in December 1992, Mr. Adams returned to the house and repaired some cracks in the masonry around the fireplace. The Craigs moved in soon after this, in February 1993.
Feeling that contract additions had driven up his cost, Adams filed a lien against the property for $39,156. The construction contract called for arbitration; both sides submitted to this and, by the time of the hearing in September 1993, only about $8,000 was still in dispute. Issues related to the fireplace included whether the plaster patch that Mr. Adams set in December 1992 matched the rest of the fascia, and whether the deeper footing (requested by the Craigs) and brass doors were in the original contract. On November 1, 1993, the arbitrator rendered an award in favor of Adams for $3,170, which the Craigs paid.
The Craigs testified that because of a warm spring, they did not use the fireplace until around Thanksgiving 1993. Lighting a fire for the first time, Mr. Craig followed the instructions, sealing the doors and vents. However, he was awakened later that night by smoke and soot, which were pouring through the ducts into the interior of the house. Mr. Craig testified that he made several attempts to contact Mr. Adams, who never responded. However, Al Randolph, a representative from Country Flame, and Harold Hay, a salesman from Acme Brick, inspected the fireplace in early December. Both of these witnesses determined that the fireplace was improperly installed in that the builder left too little space between the firebox and the surrounding masonry: the installation manual clearly calls for one inch clearance above, and two inches around all sides. According to Mr. Randolph, without this clearance the heated firebox can crack the flue tile, "which can allow smoke to escape and be drawn in by the fans." Mr. Hay added that expansion of the ducts at temperatures up to 1300° F could cause the chimney to crack. The witnesses also found iron lintels placed in the wrong direction and directly on top of the firebox instead of one inch above, creating an additional risk of cracking the masonry. Because of these problems, Country Flame refused to honor its warranty. The Craigs sent a certified letter to Adams's attorney in January 1994 to document this.
Meanwhile, the Craigs reviewed the arbitrator's award and felt that it failed to credit them $732 for receipts they actually paid. They petitioned the arbitrator to reopen the case solely on this basis; it was denied. In May 1994 they filed a suit in the 26th Judicial District Court to modify the arbitration award; this did not mention the smoke problem or fireplace defect. The suit, however, was dismissed as untimely under arbitration rules. The Craigs appealed, but this too was dismissed, for failure to brief.
Meanwhile, the Craigs replaced the fireplace at a cost of $6,561. In December 1994 they filed the instant suit against Adams, seeking to recoup this cost and incidental expenses under the NHWA. Adams filed a third party demand against Teague, the masonry subcontractor. In 1997 Adams filed an exception of res judicata, urging in essence that because the Craigs did not assert the smoke problem in the arbitration proceeding or in their first lawsuit, they waived it. After the first day of trial in January 1999, the District Court overruled this exception.[1] Trial was *1001 completed in February 2000. The testimony was often conflicting.
By written opinion the court ruled that the fireplace was part of the heating system and thus covered by NHWA, specifically the rule for additional performance standards. R.S. 9:3144 A(2), 9:3143(2). The court then found that the fireplace was improperly installed. Rejecting Mr. Adams's testimony that the Craigs had directed the masonry subcontractor's work, the court found Adams responsible for the problem and awarded the Craigs the replacement cost, $6,561. The judgment also granted Adams's third party demand against Teague for the full amount.[2] Adams has appealed.

Discussion: Res judicata
By its first assignment of error Adams urges the District Court erred in overruling the exception of res judicata. Adams argues that since the 1990 amendments to La. R.S. 13:4231, res judicata substantively encompasses both claim preclusion and issue preclusion; a second action arising out of the same occurrence (in this case, a construction contract) cannot be sustained. Hudson v. City of Bossier, 33,620 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, writ denied 00-2687 (La.11/27/00), 775 So.2d 450. He also argues that the related procedural rule requires the joinder of all claims arising out of a single transaction or occurrence. La. C.C.P. art. 425. He concedes that the Craigs could not assert the smoke problem when arbitration started, but argues that they discovered it before they sought to modify the arbitration award, both by proceedings before the arbitrator and by a separate lawsuit in the 26th Judicial District Court. Their failure to do so in both instances, Adams contends, activated res judicata.
The res judicata statute, R.S. 13:4231, provides as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Further, a party "shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." C.C.P. art. 425 A. An arbitration award carries the same res judicata effect as a judgment. Tower Hill Trading Co. v. Howard, Weil, Labouisse, Friedrichs Inc., 96-0463 (La.App. 4 Cir. 1/22/97), 687 So.2d 1096. Consistent with R.S. 13:4231(3), the Civil Code provides that the authority of arbitrators extends "only to things contained in the submission, *1002 unless it has been stated that they shall have power to decide all disputes which may arise between the parties in the course of the arbitration." La. C.C. art. 3122; Tower Hill Trading Co. v. Howard Weil, supra.
The record supports the District Court's finding that arbitration was invoked to resolve matters other than the smoke problem in the fireplace. Notably, the award was rendered November 1, 1993, some three weeks before the Craigs discovered this problem. Simply put, the arbitrator's award is conclusive only with respect to the matters submitted and actually litigated therein. La. R.S. 13:4231(3), C.C. art. 3122; Rosenbloom v. Mecom, 478 So.2d 1375 (La.App. 4 Cir.1985); Fine v. Regional Transit Authority, 95-2603 (La.App. 4 Cir. 6/26/93), 676 So.2d 1134. In fact, res judicata has been applied in this context only when the plaintiff had the opportunity to raise a particular claim but inexcusably failed to do so. See, e.g., Marburgh v. Managan Carroll Bldg. Materials Inc., 406 So.2d 320 (La.App. 3 Cir.1981); Hurley v. Fox, 587 So.2d 1 (La.App. 4 Cir. 1991). The smoke problem was not, and could not have been, placed before the arbitrator.
It is of no moment that the Craigs failed to assert the smoke problem in their petition to modify the arbitration award; this was clearly not a ground for modification. La. R.S. 9:4211;[3]Farmers Cotton Co. v. Savage, 30,289 (La.App. 2 Cir. 6/26/98), 714 So.2d 926, writ denied 98-2322 (La.11/20/98), 728 So.2d 1288. We further note that even if the mandatory joinder rule of C.C.P. art. 425 required them to assert the smoke problem in their first lawsuit, the procedural rule is not absolute and will yield to the interests of justice. R.S. 13:4232 A(1);[4]Hudson v. City of Bossier, supra. On the instant record, the Craigs did not inexcusably fail to assert the smoke problem in the prior proceedings. The District Court was not plainly wrong to deny the exception of res judicata. This assignment lacks merit.

NHWA Issues
By its remaining assignments of error, Adams urges the District Court committed manifest error in several of its findings based on the NHWA. Specifically, Adams urges that the fireplace installation and the minor defects shown at trial are excluded from coverage under R.S. 9:3144 A(2) and 9:3143(5); that the Craigs failed to prove building standards, actual physical damages and causation, as required by R.S. 9:3143(2) and 9:3144 B(13); and that even if every element of an NHWA claim was proved, the damages are excessive.
Generally speaking, the NHWA provides a mandatory warranty for the purchasers and occupants of new homes in Louisiana. R.S. 9:3141;[5]Graf v. Jim Walter Homes Inc., 97-1143 (La.App. 1 Cir. 5/15/98), 713 So.2d 682. Every builder must warrant to the owner that for two years following the warranty commencement *1003 date, the plumbing, electrical, heating, cooling and ventilating systems, exclusive of any appliance, fixture and equipment, will be free from any defect due to noncompliance with building standards. R.S. 9:3144 A(2). The warranty is also subject to certain exclusions. R.S. 9:3144 B. The trial court's factual findings in cases involving the NHWA are subject to manifest error review. Sowers v. Dixie Shell Homes of America Inc., 33,390 (La. App. 2 Cir. 5/15/00), 762 So.2d 186, writ denied 00-1770 (La.9/22/00), 768 So.2d 1286; Graf v. Jim Walter Homes, supra.
Adams first contends that the Country Flame fireplace is not covered by the NHWA because it was a fixture or equipment attached to the heating system, excluded under R.S. 9:3144 A(2), rather than a heating system. In support Adams cites a portion of the testimony of Harold Hay, the salesman from Acme Brick who inspected the fireplace in December 1993. On cross examination he agreed, in response to leading questions, that the fireplace was "equipment" and "a fixture." Elsewhere, however, he testified that it was actually a "fireplace furnace" with a combustion chamber, heat exchanger, and baffles that take in the heat and feed it into the ductwork; in some homes, it is the sole heating system. This description is corroborated by the Country Flame installation booklets and by Al Randolph's deposition. In short, there was sufficient evidence for the District Court to find that this fireplace was integrated into and became part of the heating system, thus including it under the NHWA warranty.
Adams next contends that the Craigs failed to prove "building standards," an essential element of the warranty of R.S. 9:3144 A(2). Building standards are defined as the building, mechanical, plumbing and electrical codes of the parish, city or other political subdivision where the home is located, "together with any additional performance standards, if any, which the builder may undertake to be in compliance." R.S. 9:3143(2). Adams shows that the Craigs did not introduce evidence of applicable building codes, and contends that without such evidence, the case must fail. In support it cites Sonnier v. Bayou State Mobile Homes, 96-1458 (La.App. 3 Cir. 4/2/97), 692 So.2d 698, writ denied 97-1575 (La.10/3/97), 701 So.2d 201. However, the construction contract obligated Adams to install a Country Flame fireplace, which came with installation manuals setting forth detailed standards. Mr. Adams admitted there were "installation procedures" for the fireplace. Such evidence, which was absent in Sonnier, has been uniformly held to constitute "additional performance standards." See, Graf v. Jim Walter Homes Inc., supra; Sowers v. Dixie Shell Homes, supra; Thorn v. Caskey, 32,310 (La.App. 2 Cir. 9/22/99), 745 So.2d 653. On this record, the District Court was not plainly wrong to find applicable building standards.
Adams next contends that the Craigs' claim is excluded from the NHWA builder's warranty because of a specific exclusion for "any condition which does not result in actual physical damage to the home." R.S. 9:3145 B(13). Adams urges that even if the firebox was improperly installed, the only damage was the loss of Country Flame's warranty; no physical damage occurred until the Craigs tore out the firebox, and no major structural defect was shown.[6] The Craigs' witnesses, however, testified that they found a crack in the chimney; repairing this required dismantling the hearth; and the Craigs themselves *1004 presented graphic testimony of a house filled with choking smoke and soot. In Graf v. Jim Walter Homes Inc., supra, the court noted:
Apparently, defendant would have us hold that the NHWA requires the home to be almost falling down around its inhabitants before physical damage could be shown. Such a reading of the "physical damage" requirement would be inconsistent with the purpose of the act stated in § 3141 in favor of purchasers and occupants of new homes. Id., at p. 8, 713 So.2d at 689.
On the instant record, the District Court was fully entitled to find actual physical damage; the smoke problem certainly made the house "unsafe, unsanitary or otherwise unlivable." R.S. 9:3143(5).
Adams further argues that the Craigs failed to prove causation, another element of R.S. 9:3145 B(13). It cites a passage of Al Randolph's cross examination where he agreed, in response to leading questions, that improper installation of the firebox "could" cause the smoke problem, but this was just a "best guess," not more probable than not. Elsewhere, however, he testified that because of improper installation, he would expect the flue tile to crack; that the Craigs' flue tile was indeed cracked; and that this allowed smoke to circulate into the home. Mr. Hay also testified that improper installation had caused similar smoke problems in some 15 to 20 Country Flame fireplaces. The District Court's finding of causation is not plainly wrong.
By its final assignment, Adams urges that even if the Craigs proved a breach of NHWA warranty, they did not show that replacing the fireplace was necessary. It contends that only the masonry was defective, and that Mr. Adams testified he could fix the masonry for about $400. The record, however, conclusively shows that after the Craigs first discovered the smoke problem, they notified Mr. Adams several times but he never returned their calls or letters. Mr. Hay also stated that without a warranty, the firebox was of little value. Given the serious problems with the fireplace, Mr. Adams's refusal to cooperate, and the loss of the Country Flame warranty, the District Court was entitled to find that the Craigs had no alternative but to remove the old fireplace and install a new one. Moreover, the parties stipulated that the replacement cost, $6,561, was reasonable. This assignment of error lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are assessed to the appellant, Adams Interiors Inc.
AFFIRMED.
NOTES
[1] The District Court also denied Adams's motion for involuntary dismissal, but this ruling is not an issue on appeal.
[2] Teague answered the petition and appeared pro se for the first day of trial but made no appearance on the second day (over a year later). Certified mail advising Teague of the February 2000 trial date was returned unclaimed, and counsel for Adams stated that Teague's phone had been disconnected.
[3] Grounds for modification or correction of an arbitration award include miscalculation of figures or incorrect description of any person, thing or property in the award, a showing that the award is rendered on matters not subject to arbitration, or imperfect form of the award. R.S. 9:4211.
[4] R.S. 13:4232 A(1) provides: "A judgment does not bar another action by the plaintiff when exceptional circumstances justify relief from the res judicata effect of the judgment."
[5] The NHWA was amended by 1999 La. Acts No. 649, effective August 15, 1999. The instant contract was executed in 1992 and warranty commencement occurred in January 1993. Insofar as the 1999 amendments are substantive, this case is governed by the preamendment law.
[6] "Actual physical damage" is not defined in the NHWA. However, "major structural defect" is defined as "any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable: (a) Foundation systems and footings; (b) Beams; (c) Girders; (d) Lintels * * *." R.S. 9:3143(5).