McCLENDON, J.
^Homeowners appeal a judgment rendered in accordance with a jury verdict that awarded them allegedly insufficient damages arising from a general contractor’s breach of contract, but denied them *143 damages under the New Home Warranty Act. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In December 2005, James and Vanessa Ledbetter and Homes by Paige, LLC, entered into an “Agreement to Purchase and Sell” a home, which was then under construction in Prairieville, Louisiana. An addendum was attached thereto, wherein the parties agreed that the Ledbetters were to provide Homes by Paige with a punch list at least three days prior to the Act of Sale and that Homes by Paige agreed to complete the punch list items prior to the Act of Sale. The parties further agreed that “any additional punch list items shall be completed by [Homes by Paige] within 30 days after Act of Sale.”
On January 31, 2006, an initial punch list was prepared and agreed upon by the parties. Also, a home inspection report was completed by a licensed home inspector, and he identified some issues not addressed in the initial punch list. On February 1, 2006, Homes by Paige agreed to make certain repairs listed in the initial punch list and in the home inspection report.
On February 2, 2006, the Act of Cash Sale was signed by all parties. Thereafter, the Ledbetters prepared two additional punch lists and provided them to Homes by Paige. Homes by Paige completed some of the repairs within thirty days, but at some point thereafter, the builder did not return.
On July 17, 2006, the Ledbetters filed suit naming Homes by Paige as defendant. The Ledbetters alleged that Homes by Paige failed to make numerous repairs, many of which were included in the various punch lists, despite numerous requests for the builder to do so. The Ledbetters sought damages for breach of contract, as well as damages, attorney’s fees, and court costs as provided by the New Home Warranty Act (“NHWA”), LSA-R.S. 9:3141, et seq.
^Following a three-day jury trial, the jury found that Homes by Paige breached the parties’ contract and awarded $16,154.00 arising from this breach. The jury also found that Homes by Paige violated the NHWA, but found that the Led-betters failed to provide Homes by Paige with a reasonable opportunity to repair or replace the defects. The jury did not award damages under the NHWA nor did the jury award any non-pecuniary damages.
The Ledbetters have appealed, assigning the following as error:
1) Where the [NHWA] requires that a Builder be provided a reasonable opportunity to make repairs, the jury in this matter erred as a matter of law in finding that over two years was not a reasonable opportunity for the Builder to make repairs.
2) Damages should be awarded for violation of the NHWA.
3) Where it is not possible to determine what items the jury paid on the contract claim, it is appropriate for this Court to find the total amount of the damages to the home, whether under contract or the NHWA, and then ■ to credit the jury award on the contract against the whole, and, then, to enter an award for the remainder to the Plaintiff. An additur under contract may be appropriate to grant full relief.
4) Where the jury interrogatories failed to match the jury charges on the issue of the availability of nonpecuniary damages for a breach of contract, Mr. Led-better was denied an opportunity to such damages. Under the facts of this case, an award of nonpecuniary damages *144 is appropriate. The appropriate amount below which it would be reasonable to award such damages is $15,000.00.
5) Where the jury found a breach of contract and the contract expressly provides for attorney fees, and where the jury found a violation of the NHWA, and the NHWA statutorily provides for attorney fees, the Plaintiff was entitled to an award of attorney fees and should receive such an award.
DISCUSSION
The NHWA was enacted in 1986 and codified in LSA-R.S. 9:3141, et seq., for the purpose of “providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of homeowners’ insurance as additional protection for the public against defects in the construction of new homes.” The NHWA provides a “warranty for a new home purchaser defining the responsibility of the builder to that purchaser and subsequent purchasers during the warranty periods provided herein.” LSA-R.S.4 9:3141. Morris v. Nanz Enterprises, Inc., 05-0236, p. 6 (La.App. 1 Cir. 3/1/06), 929 So.2d 115, 119.
Louisiana Revised Statutes 9:3145 provides both the notice requirements an owner is required to give a builder and the opportunity an owner must provide the builder to remedy the defects prior to instituting an action under the NHWA. Specifically, LSA-R.S. 9:3145(A) provides:
Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, within one year after knowledge of the defect, advising him of all defects and giving the builder a reasonable opportunity to comply with the provisions of this Chapter.[1] [Emphasis and footnoted added.]
Absent compliance with LSA-R.S. 9:3145, recovery under the NHWA is precluded. See Jenkins Bldg. Supply, Inc. v. Thigpen, 09-0903, p. 6 (La.App. 1 Cir. 12/23/09), 34 So.3d 867, 871, and Thorn v. Caskey, 32,-310, p. 7 (La.App. 2 Cir. 9/22/99), 745 So.2d 653, 659.
In their first assignment of error, the Ledbetters contend that the jury erred in finding that they did not provide Homes by Paige a reasonable opportunity to make repairs. The Ledbetters note that prior to and shortly after the closing in February 2006, they provided Homes by Paige inspection reports as well as several punch lists of items that needed repair. The Ledbetters also note that in the weeks following the closing, Homes by Paige sent several subcontractors to their home to make repairs. The Ledbetters aver that after Homes by Paige failed to return to complete all of the requisite repairs, they made phone calls, wrote letters, and sent two certified letters to Homes by Paige that were unclaimed. The Ledbetters assert that there is no evidence that the builder took any action to make repairs after April 2006. Accordingly, the Ledbet-ters contend that they provided Homes by Paige more than sufficient notice and opportunity to make repairs as required by LSA-R.S. 9:3145.
Paige Schexnaydre, the owner of Homes by Paige, noted that the home passed all inspections and avers that there were no defects in the home, but | .¡merely incomplete items. She testified that every time she went to the job site, Mr. Ledbetter *145 “would point out imperfections that were just so minute,” explaining “that his job at his chemical company was to find defects, and that’s what he was doing when he walked through [the house].” Mrs. Schex-naydre testified that “[e]very time we went and we fixed an item, he found something else wrong with the way we fixed it, it wasn’t fixed to his standards.” Moreover, Mrs. Schexnaydre testified that Mr. Led-better had “bragged about having people arrested from the time I met him,” including another contractor.[2]
Mrs. Schexnaydre testified that within thirty days following the closing, many of her subcontractors completed various punch list items at the Ledbetters’ home. Mrs. Schexnaydre indicated that while she was attempting to finish the remainder of the punch list, the Ledbetters filed a complaint with local law enforcement, alleging that she had trespassed on their property when she went there to check on her subcontractors. After learning of the trespass complaint, Mrs. Schexnaydre testified that she was unable to fulfill her obligations because “I was scared of [Mr. Led-better], I didn’t know what he was planning. I didn’t know if he was going to send the police after me for something else.” Mrs. Schexnaydre explained that she had never experienced anything similar. She also indicated that had she been able to get back to the property, she would have completed the punch list items.
Ramona Beth Alford, the real estate agent representing Homes by Paige, testified that she was assisting in finalizing the punch list items, but at some point she had to cut contact off between she and Mr. Ledbetter because Mr. Ledbetter “made some comments to me on my home phone ... that seemed threatening.” Ms. Alford stated that she recalls Mr. Ledbetter making a statement “about having [Mrs. Schexnaydre] arrested for trespassing.” Prior to these threats, Ms. Alford indicated that she had been “trying to help assist in | (finalizing [the] punch list items,” but “felt it may have been appropriate to step back” when the threats were made.
Four months after closing, the Ledbet-ters filed another complaint with local law enforcement, asserting that Mrs. Schex-naydre had committed theft by removing excess ceramic tile from the home immediately prior to closing. Mrs. Schexnaydre explained that excess building materials are sometimes brought to other jobsites or discarded when the house is cleaned prior to the closing. On the other hand, Mr. Ledbetter testified that Mrs: Schexnaydre had entered the home without authorization and removed the tiles. When questioned regarding why he waited four months to file a complaint, Mr. Ledbetter indicated that he believed, following his conversations with Mrs. Schexnaydre, that the excess tile was going to be returned.[3]
A jury’s factual findings in cases involving the NHWA are subject to manifest error review. Hutcherson v. Harvey Smith Const, Inc., 08-1046, p. 3 (La.App. 1 Cir. 2/13/09), 7 So.3d 775, 778. An appellate court cannot set aside the trial court’s factual findings unless it determines there is no reasonable factual basis for the findings and the findings are clearly wrong. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Thus, if the findings are reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence *146 differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
After a review of the record in its entirety, we cannot conclude that the jury committed manifest error in finding that plaintiffs prevented Homes by Paige from accessing the property and from having a reasonable opportunity to repair or replace the defective items. Accordingly, because the Ledbetters did not comply with the provisions of LSA-R.S. 9:3145, they are precluded from |7recovering under the NHWA. See Jenkins Bldg. Supply, Inc., 09-0903 at p. 6, 34 So.3d at 871. Assignments of error one and two are therefore without merit.
In their third assignment of error, the Ledbetters contend that it is impossible to determine the amounts the jury paid on the contract claim so an additur under the contract damage award may be necessary to award full relief.[4] The Ledbetters note that Michael Stein, a civil engineer who has conducted more than 2000 residential home inspections, provided a report regarding the alleged defects in the Ledbetters’ home, but he provided no cost estimate to repair the defects. Ken Tillage, who has worked in the construction industry for fifteen years, provided the cost estimation for most of the repairs suggested by Mr. Stein, and his estimate totaled $138,109.40. Additionally, the Led-betters note that Mr. Tillage’s estimate did not include the costs to reinstall the exteri- or doors, to repair the upstairs subfloor and restretch the carpet, to repair the brick veener and mortar, to replace rusted shutter hinges and window hinges, and to repair raised flashing, with the total estimated costs of these repairs being a minimum of $2,600.00. The Ledbetters conclude that they are entitled to recover the estimated repair costs provided by Mr. Tillage, along with the additional cost for repairs not included in Mr. Tillage’s estimate.
On the other hand, Eric Williams, a licensed contractor, who was hired by the Ledbetters to finish mostly “common punchlist items” so that the Led-betters could place their home on the market, made certain repairs totaling $6,800.00. Butch Ingram, an expert in the field of general construction and estimating, inspected the home after Mr. Williams completed his repairs. Mr. Ingram’s estimate for all repairs suggested by Mr. Stein, which had not been previously remedied by Mr. Williams, totaled $6,605.00. The cost-of-repair issue involved the effect and weight to be given the expert testimony. Where the fact finder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This | srule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. LeBlanc v. Landry, 08-1643, p. 11 (La.App. 1 Cir. 6/24/09), 21 So.3d 353, 362, twit denied, 09-1705 (La.10/2/09), 18 So.3d 117. Where expert witnesses present differing testimony, it is the responsibility of the trier of fact to determine which evidence is the most credible. Graf v. Jim Walter Homes, Inc., 97-1143, p. 10 (La.App. 1 Cir. 5/15/98), 713 So.2d 682, 691.
Moreover, in an action on a contract to build, the appropriate measure of damages resulting from the contractor’s breach of the implied warranty of good workmanship is generally the cost of repairs when the thing can be repaired. Graf, 97-1143 at p. 11, 713 So.2d at 691. *147 Similarly, under LSA-R.S. 9:3149(A) of the NHWA, the measure is “reasonable cost of repair or replacement necessary to cure the defect,” which effectively applies the same standard for the measure of damages. Id. Nevertheless, whether an award is made pursuant to a contract or pursuant to the NHWA, our standard of review is the same: the discretion of the trier of fact in determining damages shall not be set aside absent an abuse of discretion. Id.
In this case, the jury was presented with conflicting testimony with regard to the extent of and costs of repair. After review of the record, we conclude that a reasonable factual basis for the jury’s findings exists. Further, the jury did not abuse its discretion in awarding an amount within the range provided by the experts.[5] Accordingly, assignment of error number three is without merit.
In their fourth assignment of error, the Ledbetters aver that the specific jury interrogatory with regard to pecuniary damages denied the Ledbetters any opportunity to recover such damages because it erroneously required that such damages be provided by contract. Specifically, jury interrogatory number 11 provides:
|3Pid Homes by Paige, L.L.C. and Shelter Mutual Ins. Co. contractually agree to pay non-pecuniary damages resulting from the construction project?
The Ledbetters conclude that it was legal error for the trial court to provide an interrogatory providing that non-pecuniary damages were only available if found in the parties’ contract.
Damages for non-pecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a non-pecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss. LSA-C.C. art. 1998. Non-pecuniary damages are recoverable pursuant to LSA-C.C. art. 1998 where the obli-gee intends to gratify both pecuniary and non-pecuniary interests or where the interest is solely non-pecuniary. Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1124 (La.1992). However, “the nature of the contract (including the facts and circumstances attending its formation) must demonstrate that gratification of the non-pecuniary interest constitutes a significant interest.” Id. In Young, the Louisiana Supreme Court illustrated the difference as follows:
Although purchase of a new truck or car may be prompted by both the pecuniary interest of securing transportation and the nonpecuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle, the nature of the contract is primarily pecuniary (unless other factors evidence a different conclusion). Contrast the contract of purchase made in a standard new car sale with a contract for purchase of an antique car that, while it might be driven on the streets, represents the obligee’s desire to own, and perhaps to show, a distinctive, unique automobile. Or, contrast the traditional new car purchase contract with a contract for purchase of a specialty- *148 designed, custom-built vehicle. [Footnote omitted.]
Young, 595 So.2d at 1133.
The Ledbetters contend that they entered into the contract with Homes by Paige to satisfy a non-pecuniary interest. Specifically, Mrs. Ledbetter testified that she found the house conducive to raising a family and holding family gatherings. Mrs. Ledbetter imagined a nursery, as well as her child walking and playing in the backyard. Mr. Ledbetter testified that although he preferred |inanother house across the street, he purchased the house at issue because his wife fell in love with it and they needed a place to stay because his wife was nine months pregnant. In light of the foregoing, the Led-betters conclude that they were entitled to recover damages under Article 1998.
Even assuming that jury interrogatory number 11 was improper, neither the contract nor the facts and circumstances surrounding the formation of the contract demonstrate that the Ledbetters purchased the house for a significant non-pecuniary purpose. We note that the home was not specially designed or custom built. Rather, most of the specifications were determined by the builder, and Mrs. Ledbetter selected this home after Mr. Ledbetter had narrowed his choice down to three or four homes. Moreover, Mrs. Ledbetter acknowledged that they did not anticipate living in the home indefinitely, but “envisioned living there ... at the minimum five years.” As such, although the Ledbetters may have had some non-pecuniary interest relating to the personal preference of owning the home at issue, the nature of the contract appears to be primarily pecuniary. Cf. Thomas v. Desire Community Housing Corp., 98-2097 (La.App. 4 Cir. 7/19/00), 773 So.2d 755 (non-pecuniary damages awarded for breach of contract to build home that was culmination of a lifelong dream of rising from the housing projects to homeownership) and Mayerhofer v. Three R’s Inc., 597 So.2d 151 (La.App. 3 Cir.), writ denied, 600 So.2d 680 (La.1992) (non-pecuniary damages awarded for breach of a contract to build a home when the home was plaintiffs final home and a place she could leave her daughter). Accordingly, based on the record evidence, we find no error in the jury failing to award non-pecuniary damages. Assignment of error number four is without merit.
In their fifth assignment of error, the Ledbetters contend that they are entitled to attorney’s fees.[6] Under Louisiana law, attorney’s fees are not allowed except where authorized by statute or by contract. Smith v. Albrecht, 06-2072, p. 5 (La.App. 1 Cir. 6/8/07), 965 So.2d 879, 882. Because we find no manifest error in the jury’s finding that the Ledbetters faded to comply with LSA-R.S. 9:3145, the Ledbetters cannot recover attorney’s fees under the NHWA. See LSA-R.S. 9:3149(A). Nevertheless, the Ledbetters aver that the parties’ “Agreement to Purchase and Sell” provides for attorney’s fees. Specifically, the Ledbetters point to the following provision:
DEFAULT by SELLER and REMEDIES. In the event of default by Seller, Buyer shall have the right to demand and sue for a) specific performance; or b) at Buyer’s option, an amount equal to 5% of the Purchase Price stipulated herein as stipulated damages.... The Seller shall also be liable for brokerage fees and all attorneys’ fees and other *149 costs incurred in the enforcement of any and all rights under this agreement.
The Ledbetters contend that where the contract provides for attorney’s fees, the judgment in this matter should be entered to allow them all reasonable attorney’s fees for the enforcement of rights under the purchase agreement.
We note that although the contract does not specify what might constitute a default, the sole purpose of the agreement was to transfer title to a certain piece of immovable property. See Allen v. Shields, 06-0866, p. 2 (La.App. 1 Cir. 2/14/07), 2007 WL 466760 (unpublished opinion). Homes by Paige transferred title as required under the terms of the agreement. As such, we cannot conclude that the default provision or the attorney’s fee provision therein has been triggered. As such, the Ledbetters’ fifth assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s September 19, 2008 judgment. Costs of this appeal are assessed against the appellants, James and Vanessa Led-better.
AFFIRMED.
PETTIGREW, J., concurs.
WELCH, J., dissents and assigns reasons.

. The NHWA does not define or specify what constitutes "giving the builder a reasonable opportunity to comply.”

. Mr. Ledbetter denied that he ever had another contractor arrested.

. Mrs. Schexnaydre testified that the tiles were not returned because she was unable to locate them.

. Homes by Paige has not filed an answer to the appeal challenging whether the amount awarded for breach of contract was appropriate under these circumstances.

. The jury may have concluded that the award for breach of contract was the cost of Mr. Williams’ repairs totaling $6,800.00, plus Mr. Ingram's estimate of $6,605.00 for further repairs, plus other damages which are unspecified. Moreover, because the estimates for repair were itemized, the jury may have selected specific repair items and used either Mr. Tillage’s estimates or Mr. Williams’ estimates.

. The Ledbetters note that following entry of the final judgment, they filed a motion to assess attorney’s fees, which was denied by the trial court. The Ledbetters aver that this matter should be remanded so that a hearing may be had on the attorney's fees claim.